UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE HINDS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-01431-JSW<br><br>**ORDER RESOLVING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, SETTING BRIEFING SCHEDULE AND CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 93 |

Now before the Court for consideration is the motion for summary judgment or, in the alternative, for partial summary judgment filed by Defendant FedEx Ground Package System, Inc. ("FedEx Ground"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, FedEx Ground's motion. The Court sets forth a briefing schedule on Plaintiffs' motion for class certification and schedules a case management conference at the conclusion of this Order.

**BACKGROUND[1]**

Plaintiffs, Michelle Hinds ("Ms. Hinds") and Tyrone Powell ("Mr. Powell") (collectively "Plaintiffs") worked for FedEx Ground and Bay Rim Services, Inc. ("Bay Rim") from approximately July 2017 to February 5, 2018, and approximately November 2017 to January 12, 2018, respectively.[2] (Second Amended Complaint ("SAC"), ¶ 8; Declaration of Christopher

---

[1] Unless otherwise noted, the following facts are undisputed.

[2] Plaintiffs claim that FedEx Ground and Bay Rim are "joint employers." Although FedEx Ground disputes that it could be considered a joint employer, it is not moving for summary adjudication of that issue.

Ahern ("Ahearn Decl.,"), ¶ 2, Ex. 1 (Deposition of Michelle Hinds ("Hinds Depo.") at 220:5-221:10; Hinds Depo. Ex. 8 (Hinds' Response to FedEx Ground Interrogatory ("Resp. to Rog.") No. 1).) Since March 5, 2014, FedEx Ground has been registered with the United States Department of Transportation ("DOT") and the Federal Motor Carrier Safety Administration ("FMCSA") as a motor carrier of property engaged in interstate and foreign commerce throughout the United States, and it is subject to those agencies' regulatory authority. (Declaration of Randall Moser ("Moser Decl."), ¶¶ 1-2, 5.) FedEx Ground provides package pick-up and delivery service, in exchange for payment, from its customers to business and residential customers in all 50 states. (*Id.*, ¶ 6.) FedEx Ground performs these services using Contracted Service Providers ("CSP"), which operate under a Contract Service Provider Agreement ("CSPA").[3] (*Id.*, ¶¶ 2-3.)

Bay Rim is one of FedEx Ground's CSPs, and, like all CSPs, it is assigned a unique Contract Identification Number. (*Id.*, ¶ 3; *see also id.*, ¶ 14, Ex. A (ISPA effective March 12, 2016).) Bay Rim operated out of FedEx Ground's Oakland station, and Ms. Hinds and Mr. Powell were employed as drivers there. (*Id.*, ¶ 10.) CSPs that operate out of FedEx Ground's Oakland Station, including Bay Rim, own, operate, and maintain the vehicles used to perform services for FedEx Ground. (*Id.*, ¶ 7.) CSPs enter data points regarding each truck into FedEx Ground's Vehicle Management System ("VMS"). That data, including a unique FedEx Ground Vehicle Identification Number ("FedEx Ground VIN") associated with each truck, the Vehicle Identification Number ("VIN") assigned by the manufacturer, and each truck's manufactured Gross Vehicle Weight Rating ("GVWR") is stored in the VMS. (*Id.*; *see also id.*, ¶¶ 20, 22, 28, Exs. C, D, and F (VMS Records for certain Bay Rim vehicles).)[4]

Pursuant to the terms of Bay Rim's ISPA, which FedEx Ground attests is common to all

---

[3] According to FedEx Ground, in recent years, CSPs also have been called Independent Service Providers ("ISPs"), which operate under an Independent Service Provider Agreement ("ISPA") introduced in California in 2015. (Moser Decl., ¶ 3.) Unless otherwise noted, when the Court uses the terms CSPs or CSPAs, those terms include ISPs and ISPAs.

[4] "As used in FedEx Ground's VMS database entries, a vehicle's 'manufactured GVWR' means the vehicle's fixed maximum weight limit as specified by the manufacturer. This is different from the vehicle's 'registered GVWR,' which is the vehicle's actual weight when empty and not laden with packages." (Moser Decl., ¶ 21.)

CSPs, Bay Rim agreed to have their drivers use electronic scanners to perform various functions, including logging the trucks they drive on a given day. (ISPA § 9.2.) Each driver is assigned a unique Driver Identification Number, which "associate[s] that driver with all activity logged in the scanner until the driver logs out of the scanner[.]" (Moser Decl., ¶¶ 14-15, 23, Exs. B, E (VMS scanner data for Ms. Hinds and Mr. Powell).) Once a driver logs into the scanner, they also will scan a bar code affixed to a truck. (*See id.*, ¶ 14; Hinds Depo. at 39:6-40:18); Ahearn Decl., ¶ 3, Ex. 2 (Deposition of Tyrone Powell ("Powell Depo.") at 26:4-18).) That data is uploaded automatically to data servers maintained by FedEx Ground. (Moser Decl., ¶ 14.)

According to Ms. Hinds' testimony and FedEx Ground's records, she drove trucks with a GVWR of 10,001 pounds or more. (Moser Decl., ¶¶ 15-22, 30-31, Exs. B-D; Hinds Depo. at 116:10-122:1; Hinds Depo. Exs. 1-3.) FedEx Ground's records also show that, on two occasions, Hinds worked on a truck with a GVWR of 8,600 pounds. (Moser Decl., ¶ 22, Exs. B, D.)

Mr. Powell testified that for his first three weeks to a month at Bay Rim, he drove smaller vans but then began to drive bigger trucks exclusively. (Powell Depo. at 73:24-76:25 (describing type of trucks he drove by referencing Hinds Depo. Exs. 1-3), 134:13-22, 135:3-136:5, 139:11-17.) He also testified that on occasional shifts he would drive large and small trucks. (*Id.* at 136:6-139:6.) FedEx Ground contends Mr. Powell only drove trucks with a GVWR greater than 10,000 pounds starting on December 2, 2017. (Moser Decl., ¶¶ 22-29, 31, Exs. D-F; Powell Depo. 139:11-17; Ahearn Decl. ¶ 4, Ex. 3 (Deposition of Rupesh Parikh ("Parikh Depo.") at 11:18-22, 47:12-25 (Bay Rim's work week).) However, FedEx Ground's records show Mr. Powell drove vehicles with an unknown GVWR between December 8, 2017 and January 5, 2018. (Moser Decl., ¶ 29, Ex. E.) The records show that Mr. Powell drove vehicles with a GVWR of less than 10,000 pounds between November 2, 2017 and December 6, 2017. (*Id.*, ¶¶ 22, 28, Ex. E.)

Plaintiffs assert that FedEx Ground failed to: pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 207(a)(1); pay them overtime in violation of California Labor Code sections 510 and 1194 and 8 California Code of Regulations section 11090 ("Wage Order 9"); failed to provide them with rest and meal breaks, in violation of Labor Code section 226.7(c) and Wage Order 9 (the "rest and meal break claims"); provide accurate wage

1 statements in violation of Labor Code section 226(e) (the "wage statement claim"); and to pay all

2 wages due at the time of termination (the "waiting time penalties claim"). Plaintiffs also assert a

3 claim for violations of California's Unfair Competition Law, Business and Professions Code

4 sections 17200, *et seq.* based on these alleged violations of the FLSA and California's Labor Code

5 (the "UCL claim") and assert a claim based on the Labor Code's private attorney general's act (the

6 "PAGA Claim").

7 FedEx Ground argues it is entitled to summary judgment on Ms. Hinds' overtime claims

8 because she admitted she was not entitled to any overtime pay during her employment with Bay

9 Rim. FedEx Ground also argues it is entitled to summary judgment or, in the alternative, partial

10 summary judgment on both Plaintiffs' federal and state overtime claims because the Plaintiffs are

11 subject to the Motor Carrier Act exemption. FedEx Ground seeks summary judgment on

12 Plaintiffs' rest and meal break claims on the basis that the FMCSA issued an order that preempts

13 those claims. Finally, FedEx Ground argues that it is entitled to summary judgment on Plaintiffs'

14 UCL, PAGA, and waiting time penalties claims because those claims are derivative of and depend

15 on the viability of Plaintiffs' overtime and rest and meal break claims.

16 The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A. The Court Grants the Requests for Judicial Notice.**

19 FedEx Ground requests that the Court take judicial notice the following document:

20 California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for

21 Determination of Preemption, which the Court shall refer to as the "Preemption Order." *See* 83

22 Fed. Reg. 67470 (Dec. 28, 2018).

23 Plaintiffs, in turn, ask the Court to take judicial notice of the following two documents: (1)

24 Petition for Preemption of California Regulations on Meal Breaks and Rest Breaks for

25 Commercial Motor Vehicle Drivers; Rejection for Failure to meet Threshold Requirement, 73

26 Fed. Reg. 79204 (Dec. 24, 2008) (the "2008 Order"); and (2) Hours of Service of Drivers;

27 Amendment of the 30-Minute Rest Break Requirement, 78 Fed. Reg. 64179 (Oct. 28, 2013).

28 Neither party objects to these requests, and the orders are matters of public record. The

4

Court GRANTS the requests and takes judicial notice of the existence of the orders and the rulings therein, but it shall not take judicial notice of any disputed facts in those orders. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 689-90 (9th Cir. 2001); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir 1992).

**B.     Legal Standards Applicable to Motion for Summary Judgment.**

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

FedEx Ground bears the burden of proving that Plaintiffs are subject to an exemption from

federal and state overtime laws. *See Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 (9th Cir. 2008); *Antemate v. Estenson Logistics, LLC*, No. CV 14-5255 DSF (RAOx), 2017 WL 5159613, at *5 (C.D. Cal. Nov. 7, 2017); *Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171, 180 (2003). Therefore, in order to prevail on its motion, FedEx Ground must establish there are no genuine issues of disputed facts about whether Plaintiffs are exempt. *Celotex*, 477 U.S. at 322-23 ("the plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (setting forth burdens of production and persuasion of moving and non-moving parties dependent upon which party has ultimate burden of persuasion at trial).

**C.    FedEx Ground Is Not Entitled to Summary Judgment Based on Ms. Hinds' Response to FedEx Ground's Interrogatory No. 10.**

FedEx Ground posed the following interrogatory to Ms. Hinds: "For each CONTRACTING ENTITY YOU worked for in the RELEVANT PERIOD identify the total overtime hours YOU worked for which YOU were not paid. (*See* Hinds Depo. at 220:5-221:10; Hinds Depo. Ex. 8 at pp. 12-13 (Resp. to Rog. No. 10).) Ms. Hinds stated her objections and then responded: "Not applicable." (*Id.*)

FedEx Ground argues that this response shows that Ms. Hinds admits she is not entitled to overtime pay. However, during her deposition Ms. Hinds testified that "I do believe there are hours that I was not paid. *Like, overtime hours I was not paid for while working there.* We just got a flat $900 check. Hours were not counted while I worked there, so – but I believe I was entitled to overtime, meal periods, things of that nature while I was there, but everything – everything was just a $900 check. It was just flat line across the board. There was no overtime added, even if I went over 10 hours a day or over the eight-hour period." (Hinds Depo. at 239:10-19 (emphasis added); *see also id.* at 242:2-10, 242:25-243:15.) That testimony, and the nature of Ms. Hinds' counsel's objections to questions about the meaning of the term not applicable, lead

the Court to conclude Ms. Hinds did not admit that she has no claim for unpaid overtime.[5]

Accordingly, the Court DENIES, IN PART, FedEx Ground's motion for summary judgment.

**D.     The Court Denies FedEx Ground's Motion on the Overtime Claims.**

FedEx Ground argues Plaintiffs' overtime claims fail because they are subject to the Motor Carrier Act ("MCA") exemption. Plaintiffs, in turn, contend they are subject to an exception to that exemption. "Any motor carrier that engages in interstate commerce is subject to the Secretary of Transportation's jurisdiction, ..., and is thus exempt from the maximum hours provisions of the FLSA … ." *Reich v. Am. Driver. Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) (citations omitted); *see also* 49 U.S.C. § 13102(14); 29 U.S.C. 213(b)(1) (exempting "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions" 49 U.S.C. section 31502).

This exemption is known as the MCA exemption and, to qualify, an employee must be employed by a motor carrier, *i.e.* "a person providing motor vehicle transportation for compensation." *See* 49 U.S.C. § 13102(14). In addition, the employee's duties must affect the safety and operation of motor vehicles in transportation on public highways in interstate commerce. *See, e.g., Levinson v. Spector Motor Serv.,* 330 U.S. 649, 664-65, 678 (1947); *Antemate*, 2017 WL 5159613, at *7 & n.9. An individual employed as a driver may fall within that category of employees. 29 C.F.R. § 782.2(b)(1).

Under DOT regulations, a "driver" is "any person who operates any commercial motor vehicle" ("CMV"). 49 C.F.R. § 390.5. A CMV means, *inter alia*, "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when

---

[5]     During Ms. Hinds' deposition, FedEx Ground asked her questions about the "not applicable" response, which led to a lengthy colloquy between counsel and instructions not to answer. (*See* Hinds Depo. at 226:24-248:9.) FedEx Ground did not seek relief from the Court during the deposition, and it did not submit a discovery dispute about this portion of the deposition. Ms. Hinds argues that the response meant that she worked a certain number of hours and was paid for that work. However, Ms. Hinds contends that she answered not applicable because although she was paid, "she was not paid overtime premium pay for her overtime hours." (Opp. at 10 n.9 (citing First Amended Complaint ¶ 23; *see also* SAC ¶ 23.)

The Court advises the parties will not tolerate such conduct as this case proceeds.

7

the vehicle - (1) Has a [GVWR] or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater[.]" *Id.*

However, because of amendments to the MCA exemption, the FLSA's overtime provisions *do* apply to "a *covered employee* notwithstanding" the provisions of 29 U.S.C. section 213(b)(1). *See* Safe, Accountable, Flexible, Efficient, Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") Technical Corrections Act ("TCA") of 208 §§ 306(a), (c), Pub. L. 110-244, 122 Stat. 1572 (emphasis added).[6] Under the TCA, a "covered employee" is "an individual"

> (1) who is employed by a motor carrier …;
>
> (2) whose work, *in whole or in part*, is defined –
>
>> (A) as that of a driver, driver's helper, loader or mechanic; and
>>
>> (B) as affecting the safety of operating motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce … and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

TCA § 306(c), 122 Stat. at 1621 (emphasis added). The Court will refer to this exception as the "small vehicle exception" to the MCA exemption and, for ease of reference, will refer to vehicles with a GVWR of less than 10,000 pounds as "small vehicles."

It is undisputed that FedEx Ground is a motor carrier engaged in interstate commerce. It also is undisputed that, during their employment, Plaintiffs drove CMVs and drove small vehicles. The parties' dispute relates to the meaning of the phrase "in whole or in part" in the small vehicle exception where, as here, employees drive vehicles with GVWRs of both more and less than 10,000 pounds (a "mixed fleet"). The Ninth Circuit has not directly addressed this issue, and there is a split in authority among other courts of appeals. *Compare Schilling*, 876 F.3d at 601 (holding employees working on mixed fleet vehicles are covered by small vehicle exception but declining to give meaning to the phrase "in part" because the plaintiffs spent 70 to 90 % of their time

---

[6] The history of these amendments is set forth in *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 599-600 (4th Cir. 2017) and *Veliz v. Cintas Corp.*, No. 03-cv-01180-RS, 2008 WL 4911238, at *3-*5 (N.D. Cal. Nov. 13, 2008).

working on small vehicles), *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 176, 170 (3rd Cir. 2015) (finding plaintiff fell within small vehicle exception where she spent 49% of her total work days on small vehicles), *with Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009) (holding plaintiffs who occasionally drove lighter trucks were not covered by small vehicle exception and finding that to divide jurisdiction between Secretary of Transportation and Secretary of Labor would "require burdensome record-keeping, create confusion, and give rise to mistakes and disputes"). There also is a split of authority on this issue among district courts, including district courts within the Ninth Circuit. *See, e.g., Wilkinson v. High Plains, Inc.*, 297 F. Supp. 3d 988, 995 (D.N.D. 2018) (noting split among district courts and citing cases); *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013); *Dalton v. Sabo, Inc.*, No. 09-cv-358-AA, 2010 WL 1325613, at *4 (D. Or. Apr. 1, 2010).

In *Garcia*, the court held that if an employee in a mixed fleet does more than *de minimis* work on small vehicles, the employee would be covered by small vehicle exception. 969 F. Supp. 2d at 1260. In that case, the evidence showed that, at most, five (5) of the defendant's 20 vehicles would qualify as small vehicles. Therefore, the plaintiff could have spent 25% of his time on those vehicles, which the court viewed as more than *de minimis*. In contrast, in *Dalton*, the court found that employees who worked in a mixed fleet were subject to the MCA exemption where they failed to produce competent evidence to show they worked on small vehicles. 2010 WL 1325613, at *4. However, the court also held that even if the plaintiffs did occasionally work on small vehicles, if they "performed or were expected to perform duties on vehicles weighing in excess of 10,000 pounds in the normal course of their duties … , the MCA exemption" still would apply. *Id.* The *Dalton* court also followed the Seventh Circuit's reasoning in *Collins* that splitting jurisdiction between the Secretary of Labor and the Secretary of Transportation would place an undue burden on employers and create confusion.[7]

This split in authority derives from a dispute about whether a court should focus on the

---

[7] In *Reich*, the Ninth Circuit held that a motor carrier cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation. 33 F.3d at 1155. However, *Reich* was decided before Congress enacted the TCA, which gives some motor carrier employees protections afforded by the FLSA.

9

amount of time an employee spends working with small vehicles or whether the focus should be the amount of time an employee spends working with vehicles with a GVWR exceeding 10,000 pounds. The plain language of the small vehicle exception brings employees who work "in part" on small vehicles within its scope, and the Court finds those cases that focus on whether an employee spent some amount of time working with small vehicles more persuasive in determining whether the small vehicle exception should apply. *See Schilling,* 876 F.3d at 601-02; *McMaster*, 780 F.3d at 170*, Berry v. Best Transp., Inc.*, No. 4:16-cv-00473-JAR, 2018 WL 6830097, at *6 (E.D. Mo. Dec. 28, 2018) (finding focus on whether work done on small vehicles is the more "natural" read of TCA's text); *Byers v. Care Transp., Inc.*, No. 13-CV-15174, 2015 WL 5608287, at *6-*8 (E.D. Mich. Sept. 24, 2015); *Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-cv-6789 (CBA) (LB), 2015 WL 5567073, at * 6-*7 (S.D.N.Y. Sept. 21, 2015) (finding plain language of text, agency guidance[8], and case law supported conclusion that employees who drove small vehicles and large vehicles covered by small vehicle exception in weeks they drove small vehicles).

Although it is clear that Plaintiffs drove small vehicles, the Court does not find persuasive their argument that driving a small vehicle at any point during their employment would bring them within the scope of the small vehicle exception. Many courts have concluded that, for the small exception to apply, an employee must do more than *de minimis* work with small vehicles. *See, e.g., Oddo v. Bimbo Bakeries, Inc.*, 391 F. Supp. 3d 466, 472 (E.D. Pa. 2019) (discussing general consensus that work with small vehicles must rise above a *de minimis* level); *Wilkinson*, 297 F. Supp. 3d at 995; *Berry*, 2018 WL 6830097, at *7 (concluding *de minimis* threshold should apply but denying summary judgment on the basis that genuine factual dispute existed about whether that threshold was met); *Byers,* 2015 WL 5608287, at *8 (concluding where work with small vehicles is more than *de minimis,* an employee will fall within small vehicle exception but finding

---

[8] In 2009 and 2010, the Department of Labor's Wage and Hour Division issued a Fact Sheet and a Field Bulletin, respectively, in which it interpreted the small vehicle exception to provide FLSA overtime protection for individuals who, in a given workweek, worked on small and large vehicles. *See Heng Guo Jin*, 2015 WL 5567073, at *7 (citing U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No.2010–2, at *2–3 and U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet # 19, at *2 (2009)).

10

material issues of fact on whether each plaintiff's work was more than *de minimis*).[9]

However, those courts do not necessarily define the meaning of *de minimis*. *See, e.g., Byers,* 2015 WL 5608287, at *8 n.11. At the higher end of the spectrum, courts have concluded that a plaintiff who works with or drives small vehicles between 25% and 70% of the time will be covered by the small vehicle exception. *Schilling,* 876 F.3d at 600-602; *Garcia*, 969 F. Supp. 2d at 1261; *see also Morgan v. Rig Power, Inc.*, No. 7:15-CV0073-DAE, 2017 WL 11017230, at *16 (W.D. Tex. Sept. 1, 2017) (finding small vehicle exception applied where plaintiffs put forth evidence they worked with small vehicles approximately 50% of the time and defendant did not put forth evidence to suggest that the plaintiffs "exclusively and only" drove vehicles weighing over 10,000 pounds).

In *Oddo*, the court looked to Supreme Court authority discussing the level of services involving interstate commerce that would bring a motor carrier within the jurisdiction of the DOT. It noted the Supreme Court found that when "3% to 4% of the carrier's total services" involved interstate commerce and was "shared indiscriminately by drivers," that amount was not *de minimis*. 391 F. Supp. at 473 (quoting *Morris v. McComb*, 332 U.S. 422, 423 (1947)); *see also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.2, 875 (3rd Cir. 2015) (where the plaintiffs, collectively, drove interstate 1.3% of the time, level of services involving interstate commerce was not *de minimis*). In *Oddo*, it was "undisputed that Plaintiffs drove small vehicles for 1% or more of their trips during the relevant period," and the court concluded that they "satisfied the *de minimis* threshold to collect overtime" under the small vehicle exception. 391 F. Supp. 3d at 474. In contrast, in *Nelson v. FedEx Ground Package Systems*, the court determined that "use of a small vehicle less than one percent of the relevant period" did not take the employee out of the MCA exemption. No. 1:18-cv-01378-RM-NYW, 2019 WL 1437765, at *3 (D. Colo. Feb. 8, 2019). The Court will evaluate whether the factual record suggests Plaintiffs did more than *de minimis* work on small vehicles.

---

[9] The *Berry* court also noted that courts had not provided a clear definition of the phrase *de minimis* and stated "[t]he term is commonly understood as meaning 'to a negligible degree' or 'so insignificant as to be unworthy of attention.'" *Berry*, 2018 WL 6830097, at *7 (quoting Oxford English Dictionary (3d ed. 2008)).

11

With respect to the state claim for overtime, the overtime provisions of Wage Order 9 are "not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers, or; (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers." 8 Cal. Code Regs. § 11090(3)(L)(1)-(2). The DOT's hours of service regulations apply to drivers, who are defined as individuals who drove CMVs, *i.e.* vehicles with a GVWR of 10,001 pounds or more. 49 C.F.R. § 390.5.[10] Plaintiffs argue that this exemption cannot apply to the times they drove small vehicles because, on those days, they were not subject to the DOT's hours of service regulations.

FedEx Ground argues that Ms. Hinds would not fall within the scope of the small vehicle exception to the MCA exemption because its records show she only drove a small vehicle once. The records submitted by FedEx Ground demonstrate that Ms. Hinds worked 153 days between July 3, 2017 and February 13, 2018, approximately 37 work weeks, and show she logged in as a driver on one occasion. (Moser Decl., ¶¶ 15, 22, Exs. B, D.)[11] However, the records also show Ms. Hinds once logged in as a helper, which FedEx Ground attests is "someone who assists the driver in performing his or her duties by assisting with such tasks as navigation and dropping off and picking up packages." (Moser Decl., ¶ 17.) The text TCA also lists a "driver's helper" as the type of employee who could be considered a covered employee. Taking the facts in the light most favorably to Ms. Hinds, it is reasonable to infer that assisting a driver with navigation affects "the safety of operating motor vehicles … in transportation on public highways in interstate or foreign commerce." TCA § 306(c)(2)(B).

Thus, taking the facts in the light most favorably to her, Ms. Hinds either drove or acted as driver's helper on a small vehicle during 5.41% of her workweeks (2/37 x 100) and on

---

[10] The driver also must be engaged in interstate commerce for more than a *de minimis* amount of time. *See Reich*, 33 F.3d at 1155-56; *see also Klitzke v. Steiner Corp.*, 110 F.3d 1465, 69-70 (9th Cir. 1997) (goods moved entirely within a state still moved in interstate commerce). Plaintiffs do not dispute that the interstate commerce component of the exemption is satisfied.

[11] Ms. Hinds does not put forth any evidence that shows she drove vehicles weighing less than 10,000 pounds on other dates.

approximately 1.31% (2/153 x 100) of her workdays.[12] Based on the authorities cited above, the Court concludes that amounts to more than a *de minimis* amount of work on small vehicles, and FedEx Ground has not met its burden to show Ms. Hinds falls within the MCA exemption.

FedEx Ground's records show Mr. Powell worked 49 days between November 2, 2017 and January 5, 2018, approximately nine (9) work weeks, and drove a small vehicle on 19 of those days. (Moser Decl., ¶¶ 22-23, and Exs. D, E.) The records show Mr. Powell drove vehicles with an unknown GVR an additional 19 times between December 8, 2017 and January 5, 2018. (*Id.* ¶ 29, Ex. E.) Mr. Powell also testified that for about his first three weeks to a month, he drove a small vehicle. (Powell Depo. at 76:9-25, 134:13-20, 135:3-10; Hinds Depo. Ex. 2.) Mr. Powell testified that after that initial period, he primarily drove the type of vehicle that had a GVWR exceeding 10,000 pound but that, on about 10 occasions, he also drove what he characterized as a small van during his shifts. (Powell Depo. at 134:3-8, 135:8-136:18, 137:18-139:17.)

The Court concludes the record shows Mr. Powell drove small vehicles for more than a *de minimis* amount of time between November 2, 2017 and December 6, 2017. Therefore, FedEx Ground has not met its burden to show he falls within the MCA exemption during that period. The Court also concludes that, based on FedEx Ground's records and Mr. Powell's testimony, there are disputed issues of fact about whether Mr. Powell would fall within the small vehicle exception for the period between December 8, 2017 and January 12, 2018.

Accordingly, the Court DENIES FedEx Ground's motion for summary judgment on the overtime claims.

**E.  FedEx Ground is Entitled to Partial Summary Judgment on the Rest and Meal Break Claims.**

FedEx Ground argues that it is entitled to summary judgment based on the Preemption Order. "A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced." 49 U.S.C. §

---

[12] This analysis would not change even if the Court factors in the one reference to Ms. Hinds driving a large vehicle for No Choice because she would have worked with small vehicles about 5% of her workdays and about 1.29% of her work weeks.

31141(a). Section 31141(c) sets forth the criteria that the Secretary of Transportation uses to determine if a state law is preempted.

On December 28, 2018, the FMCSA issued the Preemption Order and determined that the California Labor Code provisions governing rest and meal breaks ("MRB Rules") are preempted under Section 31141(c) "as applied to property carrying commercial motor vehicle (CMV) drivers covered by the FMCSA's hours of service [HOS] regulations." (Preemption Order at 67470; *see also id.* at 67480 ("California may no longer enforce the MRB Rules with respect to drivers of property-carrying CMVs subject to FMCSA's HOS rules.").)[13] The HOS regulations apply to "all drivers", *i.e.* "any person who operates any" CMV. 49 C.F.R. §§ 395.1(a)(1), 390.5. As discussed above, a CMV must have a GVWR of 10,001 pounds or more. 49 C.F.R. § 390.5.

Plaintiffs argue their rest and meal break claims are not preempted because the FMCSA's determination is erroneous. FedEx Ground argues that the Court does not have jurisdiction to consider the propriety of the Preemption Order. The Court agrees. Section 31141(f), entitled "Judicial review and venue[,]" provides that a person adversely affected by a decision can petition for review "in the court of appeals of the United States for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." Plaintiffs argue this language does not divest a district court of jurisdiction to consider a challenge to a preemption order because it does not contain the term "only." The Court concludes the plain language of Section 31141(f) provides for jurisdiction with a court of appeals and provides that an adversely affected person may choose the appropriate venue.

Courts within the Ninth Circuit also have determined that a circuit court of appeals has exclusive jurisdiction to consider the propriety of a preemption order. *See, e.g., Connell v. Heartland Express, Inc.*, No. 2:19-CV-09584-RGK-JC, 2020 WL 813022, at *2-*3 (C.D. Cal.

---

[13] In the 2008 Order, the FMCSA determined that the rest and meal break rules were not regulations on commercial motor vehicle safety. (*See, e.g.,* FMCSA Preemption Order at 67471; 2008 FMCSA Order at 79206.) Thus, the Preemption Order represents a reversal of the FMCSA's prior position. *See, e.g., Silva v. Domino's Pizza*, No. SACV 18-2145 JVS (JDEx), 2019 WL 4187388, at *3 (C.D. Cal. July 22, 2019).

14

Feb. 6, 2020); *Robinson v. Chefs' Warehouse, Inc.*, No. 15-cv-05421-RS, 2019 WL 4278926, at 4 (N.D. Cal. Sept. 10, 2019); *Silva*, 2019 WL 4187388, at *3; *Henry v. Central Freight Lines,* No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *4 (E.D. Cal. June 3, 2019); *North v. Superior Hauling and Fast Transit, Inc.,* No. EDCV 18-2564 JGB (KKx), 2019 WL 6792816, at *3 (C.D. Cal. May 31, 2019); *Ayala v. U.S. Xpress Enters., Inc.*, No. EDCV 16-137-GW (KKx), 2019 WL 1986760, at * 2 (C.D. Cal. May 2, 2019). Unless and until the Ninth Circuit rules otherwise, the Preemption Order is binding on the Court.[14] Accordingly, the Court does not reach Plaintiffs' arguments about the merits of the Preemption Order. (*See* Opp. Br., Sections II.B and II.C.)

Plaintiffs also argue that the Preemption Order does not apply retroactively and, thus, cannot preempt claims based on conduct prior to December 28, 2018. The FMCSA has taken the position that the Preemption Order does apply retroactively, although there is a split among district courts within the Ninth Circuit on that issue. *See, e.g., Connell*, 2020 WL813022, at *2 & n.1 (citing FMCSA Legal Opinion on Applicability of Preemption Determinations of Pending Lawsuits (March 22, 2019) and noting split); *Silva*, 2019 WL 4187388, at *4-5 (same; declining to reach issue and staying proceedings).

In *Ayala*, the court rejected the plaintiff's argument that the Preemption Order should not be given retroactive effect. The court reasoned that the plaintiff did not seek "reconsideration of a prior determination" and, instead, asked for enforcement of Labor Code sections 226.7 and 512. 2019 WL 1986760, at *3. The court stated it "*currently* has no authority to enforce [those] regulations …. Therefore, the issue of retroactive effect is irrelevant." *Id.* (emphasis in original). The *Robinson* court considered *Ayala* and found "its conclusions appear to sound and fully applicable here," and it granted summary judgment in favor of the defendant on the plaintiff's rest and meal break claims. 2019 WL 4278926, at *4.

In contrast, in *North*, the court concluded that the plaintiff's claims were only partially

---

[14] There are pending petitions for review of the Preemption Order before the Ninth Circuit. *See, e.g., Silva*, 2019 WL 4187388, at *4; *Henry,* 2019 WL 2465330, at *4; *Ayala*, 2019 WL 1986760, at *3. Neither party has asked that the Court defer issuing a ruling on this aspect of the motion pending a decision from the Ninth Circuit, and the Court will not *sua sponte* stay the case. If the Ninth Circuit issues a decision that conflicts with the Court's conclusion, Plaintiffs may file a motion for reconsideration.

15

preempted and declined to apply the Preemption Order to claims that accrued prior to December 28, 2018. 2019 WL 6792816, at *3-*4. The court reasoned that laws and regulations generally are not applied retroactively, especially where retroactive application would take away or impair vested rights. The court determined that applying the Preemption Order retroactively would impair rights that had previously been vested under the rest and meal break laws at issue. *Id.*, 2019 WL 6792816, at *3. The court also relied on the fact that the FMCSA had changed its position on the issue, and it noted the the statement that California may "no longer enforce" the rest and meal break rules "strongly suggests prospective, not retroactive application." *Id.*

Although *North* involves a more detailed analysis of retroactivity, Plaintiffs are asking the Court to enforce California's rest and meal break laws. The Court finds the reasoning in the line of cases that have determined the Preemption Order prevents current enforcement of those laws more persuasive. Accordingly, it joins the *Ayala, Robinson,* and *Connell* courts and finds that Plaintiffs' rest and meal break claims are preempted, in part.

Plaintiffs' final argument against summary judgment on these claims is that the Preemption Order does not extend to claims based on days when they were not driving CMVs because they were not subject to the FMCSA's HOS regulations on those days. FedEx Ground notes that there is no authority on this point but urges the Court to adopt the argument it raised in connection with the overtime claims. For the reasons set forth above, the Court rejects that argument and concludes that the claims are not preempted to the extent Plaintiffs have shown they drove small vehicles, which would take them outside the scope of the FMCSA's HOS regulations.

Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART FedEx Ground's motion for summary judgment on the rest and meal break claims.

**F.    The Derivative Claims.**

The parties agree that Plaintiffs' remaining claims are derivative of the overtime and rest and meal break claims. For the reasons set forth above, the Court DENIES FedEx Ground's motion to the extent these claims are premised on the overtime claims.

FedEx Ground also argues that to the extent it prevails on the rest and meal break claims, Plaintiffs cannot pursue the claims premised on alleged violations of Labor Code sections 203 and

16

226 based on *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444 (2019), *review granted*, 455 P.3d 704, 257 Cal. Rptr. 3d 188 (Mem) (Jan. 2, 2020). In *Naranjo,* the court held that "section 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226" and reasoned that the premium payments due for violations of the rest and meal break payments were not "wages" as that term is defined in the Labor Code. 40 Cal. App. 5th at 463-474. Plaintiffs do not address FedEx Ground's argument regarding *Naranjo*. The Court construes that failure as a concession that they cannot seek penalties based on violations of their rest and meal break claims.

Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, FedEx Ground's motion for summary judgment on the derivative claims.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART FedEx Ground's motion for summary judgment. The parties previously stipulated to a briefing schedule on Plaintiffs' anticipated motion for class certification, which would be triggered by the Court's ruling on FedEx Ground's motion for summary judgment. (*See* Dkt. No. 91.) Accordingly, Plaintiffs shall file their motion for class certification by Friday, July 31, 2020. Defendants shall file their opposition by September 29, 2020. Plaintiffs shall file their reply by November 30, 2020. In light of the amount of time the parties have set to brief the motion for class certification, the Court schedules a hearing on that motion for January 29, 2021 at 9:00 a.m.

In the interim, the Court ORDERS the schedules a further case management conference on September 4, 2020 at 11:00 a.m., and the parties shall file an updated case management conference statement on August 28, 2020.

**IT IS SO ORDERED.**

Dated: June 1, 2020

_____
JEFFREY S. WHITE
United States District Judge

17