1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
[additional counsel listed on signature page]
***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

MICHELLE HINDS, an individual, and
TYRONE POWELL, an individual, on behalf of
themselves individually, and on behalf of all
others similarly situated,

Plaintiffs,

vs.

FEDEX GROUND PACKAGE SYSTEM,
INC., a Delaware corporation; and BAY RIM
SERVICES, INC. a California corporation,

Defendants.

) Case No. 4:18-cv-01431-JSW (AGT)
)
) **CLASS ACTION**
)
)
)
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES IN SUPPORT OF**
) **PLAINTIFFS' MOTION FOR CLASS**
) **CERTIFICATION, TO APPOINT CLASS**
) **COUNSEL AND CLASS**
) **REPRESENTATIVES, AND APPROVE**
) **CLASS NOTICE**
)
)
)
) Date:   April 16, 2021
) Time:  9:00 a.m.
) Ctrm:  5
) Judge: Jeffrey S. White
)
) **REDACTED VERSION OF DOCUMENT**
) **SOUGHT TO BE SEALED**
)
)
)
)

-1-

# **TABLE OF CONTENTS**

I.     SUMMARY OF THE ARGUMENT ................................................................ 1

II.    FACTS .......................................................................................................... 4

   A.   FedEx Exercises Significant Control Over Drivers' Employment through the ISP
        Agreement ............................................................................................. 6

        i.    FedEx Specifies Delivery Drivers' Job Requirements in the ISP Agreement ............ 6

        ii.   FedEx Controls the Days and Hours Drivers Work ................................... 7

        iii.  FedEx Requires Drivers to Use FedEx Work Methods ............................ 8

        iv.   FedEx Mandates the Use of Vehicles That FedEx Deems Suitable ......... 9

        v.    FedEx Requires Delivery Drivers to Meet FedEx's Appearance Standards.............. 10

        vi.   FedEx Regulates the Hiring and Firing of Delivery Drivers .................. 11

        vii.  FedEx Manages, Supervises, and Directs Delivery Drivers through the ISPs........... 12

   B.   Wage and Hour Violations.......................................................... 13

III.   LEGAL STANDARDS ............................................................................ 15

IV.    ARGUMENT.............................................................................................. 16

   A.   The Requirements of Rule 23(a) Are Satisfied .............................. 16

        1.   There is an Ascertainable and Numerous Class ....................... 16

        2.   There Are Common Questions of Law and Fact........................ 16

             i.    Whether FedEx Ground Is an Employer of the Drivers Under the "Engage to
                   Work" Test Presents Common Questions ................................ 18

             ii.   Whether FedEx Ground Is an Employer of the Drivers Under the "Suffer or
                   Permit to Work" Test Presents Common Questions ................... 21

             iii.  Whether FedEx Ground Is an Employer of the Drivers Under the "Exercises
                   Control Over Wages, Hours, or Working Conditions" Test Presents Common
                   Questions.......................................................................... 22

        3.   The Class Representatives' Claims are Typical of the Class Claims........................ 24

        4.   The Named Plaintiffs Will Adequately Represent the Class .................... 25

   B.   The Requirements of Rule 23(b)(3) Are Satisfied.......................... 26

-i-

1.    Predominance ........................................................................ 26

    a.    Common Questions Predominate Over Any Individualized Issues ..................... 26

        i.    Common Issues Predominate with Respect to the Meal Period and Rest Break Claims................................................................................ 27

        ii.    Common Issues Predominate with Respect to the Overtime Claims .............. 30

        iii.    Common Issues Predominate with Respect to Plaintiffs' Derivative Claims... 31

        iv.    Damages.............................................................................. 32

2.    Superiority.......................................................................... 32

        i.    Class Members Have Limited Interest in Individually Controlling Separate Actions ............................................................................... 33

        ii.    It is Desirable to Concentrate Class Members' Claims in this Forum.............. 33

        iii.    Class-wide Resolution of Class Members' Claims Will be Manageable ........ 34

C.    Alternatively, the Court May Adjudicate Common Issues on a Class-wide Basis Pursuant to Rule 23(c)(4) .................................................................. 34

D.    The Court Should Approve Notice to the Class............................................ 35

V.    CONCLUSION .............................................................................. 35

-ii-

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

1

<b><u>TABLE OF AUTHORITIES</u></b>

2 <b><u>Cases</u></b>

3 *Abdullah v. U.S. Sec. Assocs., Inc.,*

4    731 F.3d 952 (9th Cir. 2013)............................................................ 27, 28, 31, 34

5 *Air Couriers Int'l v. Emp't Dev. Dep't,*

6    150 Cal.App.4th 923, 59 Cal.Rptr.3d 37 (2007) ...................................... 19

7 *Alexander v. FedEx Ground Package System, Inc.,*

8    765 F.3d 981 (9th Cir. Aug. 27, 2014).......................................... passim

9 *Amchem Products, Inc. v. Windsor,*

10    521 U.S. 591 (1997) .......................................................................... 26, 33

11 *Arias v. Super. Ct.,*

12    46 Cal. 4th 969 (2009)......................................................................... 3, 5

13 *Bateman v. Am. Multi-Cinema, Inc.,*

14    623 F.3d 708 (9th Cir. 2010)................................................................... 33

15 *Benton v. Telecom Network Specialists, Inc.,*

16    220 Cal. App. 4th 701 (2014)................................................... 27, 28, 31

17 *Berger v. Home Depot USA, Inc.,*

18    741 F.3d 1061 (9th Cir. 2014)................................................................ 26

19 *Blackie v. Barrack,*

20    524 F.2d 891 (9th Cir. 1975) ................................................................ 16

21 *Boyd v. Bank of Am. Corp.,*

22    300 F.R.D. 431 (C.D. Cal. 2014) .......................................................... 32

23 *Brinker Rest. Corp. v. Superior Court,*

24    53 Cal. 4th 1004 (2012)......................................................... 27, 28, 29

25 *Briseno v. ConAgra Foods, Inc.,*

26    844 F. 3d 1121 (9th Cir. 2017)............................................................. 15

27 *Cicairos v. Summit Logistics, Inc.,*

28    133 Cal. App. 4th 949 (2005)............................................................... 29

-iii-

*Craig v. FedEx Ground Package System,*
  300 Kan. 788, 335 P.3d 66 (Oct. 3, 2014)................................................................. 1

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980) ................................................................................................... 33

*Dilts v. Penske Logistics, LLC,*
  267 F.R.D. 625 (S.D. Cal. 2010)........................................................................ 29, 32

*Dolan v. FedEx Ground Package System, Inc.,*
  Case No. 5:18-cv-06934 (N.D. Cal. Nov. 15, 2018)................................................. 33

*Dynamex Operations West v. Superior Court,*
  4 Cal.5th 903 (2018)................................................................................. 18, 19, 20, 21

*Ellis v. Costco Wholesale Corp.,*
  285 F.R.D. 492 (N.D. Cal. 2012). ............................................................................ 34

*Estrada v. FedEx Ground Package System, Inc.,*
  154 Cal.App.4th 1 (2007).......................................................................................... 20

*Faulkinbury v. Boyd & Assocs., Inc.,*
  216 Cal.App.4th 220 (2013)...................................................................................... 28

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992)..................................................................................... 24

*Harris v. Palm Springs Alpine Estates,*
  329 F.2d 909 (9th Cir. 1964)..................................................................................... 16

*Hofstetter v. Chase Home Fin., LLC,*
  2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ......................................................... 16

*In re Abbott Labs. Norvir Anti-Trust Litig.,*
  2007 WL 1689899 (N.D. Cal. June 11, 2007) .......................................................... 16

*In re Brazilian Blowout Litig.,*
  2011 WL 10962891 (C.D. Cal. Apr. 12, 2011).................................................... 24, 25

*In re FedEx Ground Package System, Inc. Employment Practices Litigation,*
  792 F.3d 818 (7th Cir. July 8, 2015) .......................................................................... 1

*Int'l Brotherhood of Teamsters v. FMCSA,*
  Case No. 18-73488 (9th Cir. 2018) .......................................................................... 4

*Jaimez v. Daiohs USA, Inc.,*
  181 Cal. App. 4th 1286 (Cal. Ct. App. 2010) ......................................................... 29

*Jimenez v. Allstate Ins. Co.,*
  765 F.3d 1161 (9th Cir. 2014) ................................................................................. 32

*Kamar v. Radio Shack Corp.,*
  254 F.R.D. 387 (C.D. Cal. 2008), aff'd, 375 F. App'x 734 (9th Cir. 2010). ........... 26

*Keilholtz v. Lennox Hearth Prods.,*
   268 F.R.D. 330 (N.D. Cal. 2010) ............................................................................ 16

*Leyva v. Medline Indus. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ....................................................................... 31, 32, 33

*Martin v. Monsanto Co.,*
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ........................................................ 26

*Martinez v. Combs,*
  49 Cal.4th 35 (2010) ........................................................................................ passim

*Ortega v. J.B. Hunt Transp., Inc.,*
  258 F.R.D. 361 (C.D. Cal. 2009) ........................................................................ 27, 32

*Overpeck v. FedEx Corp., et al.,*
  Case No. 18-cv-07553-PJH (N.D. Cal. Apr. 1, 2020) ............................................ 33

*Parsons v. Ryan,*
  754 F.3d 657 (9th Cir. 2014) ................................................................................... 17

*Pina v. Con-Way Freight, Inc.,*
  2012 WL 1278301 (N.D. Cal. Apr. 12, 2012) ........................................................ 29

*Richmond v. Dart Indus., Inc.,*
  29 Cal. 3d 462 (1981) .............................................................................................. 16

*Rinaldi v. Workers' Comp. Appeals Bd.,*
  227 Cal.App.3d 756 (1991) ..................................................................................... 21

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

*S .G. Borello & Sons v. Dep't of Indus. Relations*,
    48 Cal.3d 341 (1989) ............................................................................... 18, 19, 21

*Salvagne v. Fairfield Ford Inc.*,
    264 F.R.D. 321 (S.D. Ohio 2009) ..................................................................... 24

*Sav-On Drug Stores, Inc. v. Super. Ct.*,
    34 Cal. 4th 319 (2004) ..................................................................................... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................ 15

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005) ..................................................................... 24

*Ste. Marie v. E. R.R. Ass'n*,
    72 F.R.D. 443 (S.D.N.Y. 1976) ........................................................................ 33

*Stockwell v. City & Cnty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) ........................................................................... 17

*Toyota Motor Sales U.S.A., Inc. v. Superior Ct.*,
    220 Cal.App.3d 864, 269 Cal.Rptr. 647 (1990) ................................................ 19

*United Steel v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ............................................................................ 17

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ............................................................................ 35

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338, 350 (2011). ................................................................................ 17

*Wiegele v. FedEx Ground Package Sys.*,
    2008 U.S. Dist. LEXIS 10246 (S.D. Cal. Feb. 12, 2008) ................................. 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................... 24, 33

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .......................................................................... 32

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................................ 32

**<u>Statutes</u>**

Bus. & Prof. Code § 17200, *et seq.*............................................................... 3, 32

Cal. Labor Code § 201 – 203 ..................................................................... 4, 5, 32

Cal. Labor Code § 226 ..................................................................................... 31

Cal. Labor Code § 226(a) ................................................................................. 31

Cal. Labor Code § 226(e) ....................................................................... 3, 31, 32

Cal. Labor Code § 226.7(c) ...................................................................... 3, 5, 27

Cal. Labor Code § 2750.5 ................................................................................ 19

Cal. Labor Code § 500(a) ................................................................................. 30

Cal. Labor Code § 510 ............................................................................... 3, 30

Cal. Labor Code § 512(a) ................................................................................. 27

Cal. Labor Code § 1194 ............................................................................. 3, 30

**<u>Other Authorities</u>**

I.W.C. Wage Order 9 ............................................................................... 17, 31

I.W.C. Wage Order 9(2) ................................................................................... 17

I.W.C. Wage Order 9(3) ..................................................................................... 3

I.W.C. Wage Order 9(11) ................................................................................... 3

I.W.C. Wage Order 9(12) ................................................................................... 3

I.W.C. Wage Order No. 5-2001 § 11.21 ........................................................... 27

I.W.C. Wage Order No. 5-2001 § 12 ................................................................ 27

I.W.C. Wage Order No. 5-2001 § 2(U). ........................................................... 30

I.W.C. Wage Order No. 5-2001 § 3(A)(1) ........................................................ 30

I.W.C. Wage Order No. 5-2001 § 7 .................................................................. 31

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................. 15

Fed. R. Civ. P. 23(a) .................................................................................. passim

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

Fed. R. Civ. P. 23(b)(3)..................................................................................... passim

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 35

Fed. R. Civ. P. 23(c)(4)................................................................................. 3, 34, 35

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

# I.     <u>SUMMARY OF THE ARGUMENT</u>

Between 2003 and 2009, dozens of lawsuits were filed against Defendant FedEx Ground Package System, Inc. (hereinafter "FedEx Ground" or "FXG") for improperly classifying FedEx delivery drivers as independent contractors and then short-changing them on pay and benefits. On August 27, 2014, the Ninth Circuit Court of Appeals concluded that the delivery drivers were employees, not independent contractors, and were therefore entitled to overtime and other benefits. *See Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. Aug. 27, 2014). The Ninth Circuit in *Alexander* focused on FedEx's control of the drivers despite the operating agreement referring to them as "independent contractors." The Ninth Circuit wrote:

> "As a central part of its business, FedEx Ground Package System Inc. contracts with drivers to deliver packages to its customers. The drivers must wear FedEx uniforms, drive FedEx-approved vehicles and groom themselves according to FedEx's appearance standards. FedEx tells its drivers what packages to deliver, on what days, and at what times. Although drivers may operate multiple delivery routes and hire third parties to help perform their work, they may do so only with FedEx's consent. FedEx contends its drivers are independent contractors under California law. Plaintiffs, a class of FedEx drivers in California, contend they are employees. We agree with plaintiffs."

*Alexander*, 765 F.3d, at *984.

That decision was quickly followed by a similar decision from the Supreme Court of Kansas, and the Kansas decision was then adopted in July 2015 by the Seventh Circuit Court of Appeals. *See Craig v. FedEx Ground Package System*, 300 Kan. 788, 335 P.3d 66 (Oct. 3, 2014); *In re FedEx Ground Package System, Inc. Employment Practices Litigation*, 792 F.3d 818 (7th Cir. July 8, 2015). All three of those decisions reached the same conclusion: FedEx had in fact established an employment relationship with its delivery drivers, despite classifying and treating the workers as independent contractors. FedEx ultimately paid nearly $500 million in settlement costs to resolve the dozens of cases brought against it by delivery drivers.

In response to the misclassification lawsuits, FedEx transitioned its independent-contractor model ("IC model") to an Independent Service Provider ("ISP") model to add a layer of separation – at least on paper – between itself and the delivery drivers who perform FedEx's deliveries. Under the ISP model, delivery drivers must become employees of an ISP entity (required by FedEx to

-1-

register as a corporation) to perform deliveries for FedEx pursuant to an ISP Agreement ("ISPA") between the ISP and FedEx. *See* Declaration of Ronald A. Marron in Support of Plaintiffs' Motion for Class Certification ("Marron Decl."), at ¶ 2 & Ex. 1 [Form 10-K for May 2015].  By May 31, 2019, over two-thirds of standard FedEx Ground volume was being delivered by ISPs. *See id.* at ¶ 3 & Ex. 2 [Form 10-K for May 2019]. Despite FedEx's transition to the ISP model, Delivery Drivers under the ISP model frequently work overtime and without meal and rest breaks, delivering packages for FedEx out of FedEx stations in California, just as FedEx drivers did for years under the IC model.

This putative class action lawsuit challenges FedEx's attempt to avoid its wage and hour responsibilities under California law through its ISP model. Plaintiffs allege that Defendant FedEx Ground utilized a common plan, scheme, and design to off-load employer wage and hour obligations to local delivery driver servicers (called Independent Service Providers or "ISPs") while keeping, retaining, and maintaining control over all logistics and deliveries for each driver ("Drivers" or "Delivery Drivers"), that resulted in systematic inability to take minimum required break periods, or to be able to complete routes in the allotted time, resulting in underpayment of regular and/or overtime wages. *See generally*, Dkt. No. 76 [Second Amended Complaint ("SAC")]. The conditions and treatment of all Delivery Drivers in California are governed by FedEx's written management policies and procedures outlined in the ISP Agreement which all ISPs are expected to enforce.

The case is readily amenable to class certification. Each of the Rule 23(a) criteria is satisfied. Regarding numerosity, ██████████ drivers were employed by ISPs and FedEx pursuant to ISP Agreements. For commonality, Plaintiffs demonstrate that Defendants' unlawful behavior was the same to all class members so that liability to each will be determined by answering the same questions, including whether Defendants violated California wage and hour laws and whether each Defendant is an employer of the Delivery Drivers. For typicality, Plaintiffs demonstrate that the legal theory and type of injury is the same for all class members, and with respect to adequacy, Plaintiffs demonstrate that they and their counsel have no conflicts and have been vigorously prosecuting the case on behalf of the class.

In addition, each of the Rule 23(b)(3) and 23(c)(4) criteria is satisfied. The Class's claims present predominating common questions based on objective standards that can be resolved through class-wide evidence. Because a determination of whether FedEx Ground is an employer of the class members will resolve an issue that is central to the validity of each one of Plaintiffs' claims in one stroke, Plaintiffs' claims are appropriate for class treatment. And because the Class challenges uniform employment conditions and treatment, Class damages necessarily flow from Defendants' conduct creating the legal liability.

For the reasons set forth below, Plaintiffs respectfully move the Court for an Order pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), certifying, with respect to their claims for failure to authorize and permit rest periods in violation of I.W.C. Wage Order 9(12) and Cal. Labor Code § 226.7(c)[1]; failure to provide meal periods in violation of I.W.C. Wage Order 9(11) and Cal. Labor Code 226.7(c)[2]; failure to pay overtime premiums in violation of I.W.C. Wage Order 9(3) and Cal. Labor Code § 510 and § 1194; failure to provide accurate wage statements in violation of Cal. Labor Code § 226(e)[3]; and violations of the Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*,[4] a California Class defined as follows:

> All persons who (a) picked up and delivered packages for customers of FedEx Ground Package System, Inc. (FedEx Ground); (b) worked for an Independent Service Provider (ISP) with whom FedEx Ground contracted to pick up and deliver packages in California; and (c) drove a vehicle with a Gross Vehicle Weight Rating of 10,000 pounds or less while performing the pickup-and-delivery services at any time on or after June 27, 2015 to the

---

[1] Plaintiffs' allegations regarding violations of I.W.C. Wage Order 9(12) and Cal. Labor Code § 226.7(c) are based on the days they drove vehicles with a manufactured GVWR of 10,000 pounds or less. (*See* Dkt. No. 103).

[2] Plaintiffs' allegations regarding violations of I.W.C. Wage Order 9(11) and Cal. Labor Code 226.7(c) are based on the days they drove vehicles with a manufactured GVWR of 10,000 pounds or less. (*See* Dkt. No. 103).

[3] Plaintiffs' allegations regarding violations of Cal. Labor Code 226(e) are premised on Plaintiffs' overtime claims. (*See* Dkt. No. 103).

[4] Plaintiffs are not seeking class certification of their PAGA claim because it does not need to meet class certification requirements. *Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009). Thus, Plaintiffs will pursue their PAGA claim whether or not the Court grants certification.

-3-

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

1  present ("Class Period").[5]

2  Plaintiffs also respectfully move the Court for an Order pursuant to Federal Rules of Civil

3  Procedure 23(a) and 23(b)(3), certifying, with respect to their claims for waiting time penalties

4  under Cal. Labor Code §201 – 203[6], a subclass defined as follows:

5  All members of the Class who have separated from their employment with an ISP.

6

7  Class certification will most effectively further California's judicial goals of allowing the

8  class members to challenge FedEx's uniform policies and vindicate their common rights under the

   California Labor Code. Class certification is therefore appropriate.

9

## II.    FACTS

10

11  This action was filed in the United States District Court for the Northern District of

12  California on March 5, 2018. (*See* Dkt. No. 1). Plaintiffs then filed a First Amended Complaint

13  ("FAC") on May 10, 2018. (*See* Dkt. No. 19). Defendant FedEx Ground Package System, Inc.

14  ("FedEx") filed an answer to Plaintiffs' FAC on May 24, 2018. (Dkt. No. 21). Defendant Bay Rim

15  Services, Inc. ("Bay Rim") filed an answer to Plaintiffs' FAC on May 31, 2018. (Dkt. No. 23).

16  Plaintiffs filed a Second Amended Complaint ("SAC") on May 10, 2019. (Dkt. No. 76). On

17  October 25, 2019, Defendant FedEx filed a Motion for Summary Judgment. (Dkt. No. 93).

18  Plaintiffs filed an opposition to Defendant FedEx's Motion for Summary Judgment on November

19  8, 2019, and Defendant filed a reply brief on November 15, 2019. (Dkt. Nos. 97, 99). The Court

20  granted in part and denied in part Defendant's Motion for Summary Judgment on June 1, 2020.

21  (Dkt. No. 103). In its Order, the Court upheld Plaintiffs' overtime claims, Plaintiffs' rest and meal

22  break claims to the extent Plaintiffs drove vehicles with a GVWR of 10,000 pounds or less, and

23  ─────────────

24  [5] There are pending petitions for review in the Ninth Circuit of the FMCSA's order preempting California meal and rest period law for drivers of vehicles with a GVWR of 10,000 lbs. or less. *See Int'l Brotherhood of Teamsters v. FMCSA*, Case No. 18-73488 (9th Cir.) (oral argument heard November 16, 2020). If the Ninth Circuit overturns the FMCSA preemption order, Plaintiffs will request a more expansive class definition that is not limited to drivers who drove vehicles with a Gross Vehicle Weight Rating of 10,000 pounds or less.

25

26

27  [6] Plaintiffs' allegations regarding violations of Cal. Labor Code §§ 201 – 203 are premised on Plaintiffs' overtime claims. (*See* Dkt. No. 103).

28

─────────────

-4-

Plaintiffs' derivate claims based on their overtime claims. *See id*. The Court granted Defendant's Motion for Summary Judgment in part on violations of Labor Code 203 and 226 to the extent they were based on Plaintiffs' rest and meal break claims and in part on Plaintiffs' rest and meal break claims to the extent Plaintiffs were not driving vehicles with a GVWR of 10,000 pounds or less. *See id*.

Plaintiffs and Class Members are current and former Pick-up and Delivery Drivers ("Delivery Drivers" or "Drivers") pursuant to ISP Agreements between ISPs and FedEx. "Plaintiff Hinds was employed as a driver by Defendant Bay Rim from approximately July 2017 until approximately February 5, 2018." SAC ¶ 8; *see also* Declaration of Michelle Hinds in Support of Plaintiffs' Motion for Class Certification ("Hinds Decl."), ¶ 4 & Ex. A [Hinds Dep. Tr. at 19:11-20]. "Plaintiff Powell was employed as a driver by Bay Rim from approximately November 2017 until approximately January 12, 2018." SAC ¶ 8; *see also* Declaration of Tyrone Powell in Support of Plaintiffs' Motion for Class Certification ("Powell Decl."), ¶ 4 & Ex. B [Powell Dep. Tr. at 120:21 – 121:4]. Plaintiffs allege that ISPs and FedEx are liable for regularly failing to provide Plaintiffs and their coworkers legally required overtime, meal and rest breaks, accurate itemized wage statements, and waiting time penalties.[7]

The SAC alleges that FedEx Ground contracts with numerous small ISPs, such as Defendant Bay Rim, "to provide vehicles and drivers to pick up packages from a FedEx Ground distribution facility, deliver those packages to FedEx Ground customers, pick up packages from FedEx Ground customers, and deliver those packages back to the facility." (SAC ¶ 7). Plaintiffs challenge a series of common policies and practices by which Defendants systematically underpaid class members by: (1) failing to "authorize and permit Plaintiffs and other drivers to take rest periods [and meal periods], and in those instances [failing] to pay them one additional hour of pay at their regular rates of compensation," (2) failing to pay daily overtime to class members who worked more than eight hours in a day, more than 12 hours in a day, and more than 40 hours in a week, (3) failing "to furnish Plaintiffs and other drivers with an accurate itemized statement", and

---

[7] Plaintiffs also seek PAGA penalties that will not be addressed in this motion, as PAGA penalties are not subject to class procedures. *Arias v. Super. Ct*., 46 Cal. 4th 969, 986 (2009).

(4) failing to "pay Plaintiffs and other drivers who separated from employment all wages due upon their terminations, or within 72 hours after they quit their employments." (SAC ¶¶ 18-39). Plaintiffs' lawsuit also raises the overarching issue of whether FedEx is a joint employer or is otherwise liable under California law. *See* Fed. R. Civ. P. 23(b)(3).

**A. FedEx Exercises Significant Control Over Drivers' Employment through the ISP Agreement**

Like the former IC model, FedEx maintains significant control over all Delivery Drivers and ISP operations. Similar to the standard operating agreements used in the IC model, each ISP enters into an ISP Agreement ("ISPA") with FedEx ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ *and compare id*. at ¶ 6 & Ex. 5 [IC Model Operating Agreement ("IC Model OA" or "OA"]). ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████ mandates that Drivers be classified as employees of ISPs, but grants FedEx substantial rights to control the manner and means of the Drivers' work. ████████████████ ███████████ *and compare Alexander*, *supra*, 765 F.3d at *989 ("The OA and FedEx's policies and procedures unambiguously allow FedEx to exercise a great deal of control over the manner in which its drivers do their jobs" despite the OA characterizing drivers as independent contractors).

**i. FedEx Specifies Delivery Drivers' Job Requirements in the ISP Agreement**

As per the ISPA, FedEx exercises significant control over Delivery Driver employment. Delivery Drivers must collect and transport FedEx packages ████████████████████ ████████████████ for delivery to FedEx customers at addresses specified by FedEx. ████████ ████████████████████████████████████████████████████████████ ████████████ Delivery Drivers are required to pick up and deliver FedEx packages ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

1  ███████████████████████████████████████████

2  ████████████████ Under the ISPA, FedEx Ground ████████████

3  ███████████████████████████████████████████

4  ████████████████████████████████ *compare Alexander*,

5  765 F.3d at *984 ("The OA [under the IC Model] gives FedEx the authority to 'reconfigure' a

6  driver's service area upon five days' written notice."). ██████████████

7  ███████████████████████████████████████████

8  ████

9  **ii.      FedEx Controls the Days and Hours Drivers Work**

10  Delivery Drivers must deliver packages ████████████████

11  ███████████████████████████████████████████

12  ███████████████████████████████████████████

13  ████████████████████ *compare Alexander*, 765 F.3d at *984 ("Drivers must deliver

14  packages every day that FedEx is open for business"); ████████████

15  ███████████████████████████████████████████

16  ████████████████████████████ Under the ISPA, FedEx Ground ████

17  ███████████████████████████████████████████

18  Delivery Drivers must also pick up FedEx packages within a specific window of time negotiated

19  between FedEx and its customers. ████████████████████

20  ████████████; *see also* Hinds Decl., ¶ 12 & Ex. A [Hinds Dep. Tr. 68:10-14; 74:13-19]; *compare*

21  *Alexander*, 765 F.3d at *984, 990 (describing same regarding IC Model). At some FedEx stations,

22  Drivers are required to wait for FedEx loaders to load packages onto the Drivers' trucks before

23  Drivers can begin making deliveries. ████████████████████

24  ████████████ *see also* Hinds Decl., ¶ 17 & Ex. A [Hinds Dep. Tr. at 65:18 – 66:5 ("Q: Can you

25  provide any kind of estimate as to, you know, how much time on the high end versus the low end

26  that you would spend waiting for the truck to get loaded? . . . Q: …it could be anywhere from

27  nothing to 10 minutes to an hour to two hours; right? A: Yes.")]; *see also* Powell Decl., ¶ 18 &

28  Ex. B [Powell Dep. Tr. at 38:4-20 ("Q: And up to how long would you wait then for the truck to

be loaded before starting your route? A: Sometimes 15 to 30 minutes, depending on how much package[s] we have. Q: Was it ever longer than that? A: With all of the processing, sometimes it had been.")]; *and compare Alexander*, 765 F.3d at *990 ("Drivers are not supposed to leave their terminals in the morning until all of their packages are available…").

### iii.     FedEx Requires Drivers to Use FedEx Work Methods

All Drivers are required to use a special type of scanner containing FedEx software (Star IV or Star V scanners as specified by FedEx) while making deliveries to scan in packages and mark them as delivered. ███████████████████████████████████████ *see also* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. 100:23 – 101:24]. The scanners are linked to a Delivery Driver's unique employee ID number, which is assigned to all Drivers by FedEx Ground. *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. at 56:23 – 57:25]. FedEx maintains direct access to all data generated from the Star IV and Star V scanners and uses that data to track Drivers' performance and generate reports, including reports that identify "violations." *See id*. [Means Dep. Tr. 105:14-19]; █████████████████████████████

***Package Scanning***: Under the ISPA, Drivers are required to ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████ █████████████████████████ *see also Alexander*, 765 F.3d at *984 ("After each delivery, drivers must use an electronic scanner to send data about the delivery to FedEx."). Delivery Drivers are also expected to deliver all packages before returning to the FedEx stations. *See* Hinds Decl., ¶ 30 & Ex. A [Hinds Dep. Tr. at 51:18-23]; Powell Decl., ¶ 8 & Ex. B [Powell Dep. Tr. at 60:22-25]. Any packages that are not delivered on any given day must be scanned and coded as to why they were not delivered. *See* Hinds Decl., ¶ 3 & Ex. A [Hinds Dep. Tr. at 77:8-19].

***Recording Hours Worked***: FedEx also requires Delivery Drivers to use the scanners at the beginning and end of every workday to report their on-duty hours using their unique employee ID number and password. *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. 97:17 – 103:4]; ███████

-8-

[REDACTED]

**Vehicles**: Delivery Drivers must also use the scanner system to scan a unique electronic bar code sticker affixed to the vehicle used in order to associate a particular vehicle driven by Drivers with that Driver and with all package pick-up and delivery activity logged by the particular Driver on a particular day. *See* Dkt. No. 93-5 [Moser Decl., ¶ 14].

**Additional Documentation**: FedEx requires Delivery Drivers to prepare [REDACTED]

[REDACTED]

### iv. FedEx Mandates the Use of Vehicles That FedEx Deems Suitable

FedEx further controls labor and operational matters through specific guidelines. For example, any vehicle used by Delivery Drivers must be within the parameters set by FedEx in the ISP Agreement, or must otherwise be pre-approved for use by FedEx. Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. 90:18 – 94:5]; [REDACTED] *and compare Alexander*, 765 F.3d at *986 ("Vehicles … must be specifically approved by FedEx."). FedEx requires [REDACTED] [REDACTED] *and compare Alexander*, 765 F.3d at *986 (All vehicles must be "'maintained in a clean and presentable fashion free of body damage and extraneous markings.'"). Each vehicle must

[REDACTED]

-9-

1  ██████████████████████████████ FedEx Ground maintains the vehicle odometer

2  readings, unique number assigned to each vehicle by FedEx, each truck's Vehicle Identification

3  Number ("VIN") assigned by the truck's manufacturer, and each truck's manufactured Gross

4  Vehicle Weight Rating ("GVWR") in FedEx Ground's Vehicle Management System ("VMS").

5  ████████████████████████ ; *see also* Dkt. No. 93-5 [Moser Decl., at ¶ 7]). ████████

6  ████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ██████████ FedEx further requires ISPs to submit a monthly maintenance record to FedEx

9  showing that they are in compliance with federal motor carrier safety regulations. *See* Marron

10  Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. 149:2 – 151:14]; ████████████████████████████

11  ████████████████████████

12  **v.    FedEx Requires Delivery Drivers to Meet FedEx's Appearance Standards**

13  Drivers are also required to adhere to the "appearance" standards ████████████

14  ████████████████████████████████████████████████████████████████████████

15  ████████████████████ Each Delivery Driver ████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ██████████████ *and compare Alexander*, 765 F.3d at *987 ("Drivers must keep their 'personal

19  appearance consistent with reasonable standards of good order..."). Delivery Drivers are further

20  required to wear an identification badge provided by FXG which displays the FedEx logo and the

21  Driver's picture, name, and title. ████████████████████████████████████████

22  ██████████████████ Marron Decl., ¶ 10 & Ex. 9 [Plaintiffs' ID Badges]; *see also* Marron Decl., ¶ 9 &

23  Ex. 8 [Means Dep. Tr. 56:23 – 59:22; 62:10-23; 63:8 – 65:3; 136:22 – 138:23; 140:16 – 141:23].

24  Delivery Drivers ██████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████ *see also id.* at ¶ 9 & Ex. 8 [Means Dep.

28  Tr. at 138:10-14 ("Q: Do you know of any ISP in California that's not participating in the brand

promotion program? A: …I'm not aware of anyone in California that is not in the uniform portion of the brand promotion program.")]; *see also* Hinds Decl., ¶¶ 14-15 & Ex. A [Hinds Dep. Tr. at 105:15-21 ("Q: When you drove for Bay Rim and No Choice, did you wear a uniform that said FedEx on it? A: Yes. Q: Can you describe what the items of the uniform were? A: It was black with a purple stripe and the FedEx Ground logo on the … sleeve.")]; Powell Decl., ¶ 29 & Ex. B [Powell Dep. Tr. at 87:1-15 ("Q: …you had the opportunity to observe other contracted drivers who were working for other contractors, right? A: Yes. Q: All right. Did you ever observe any of those individuals at the terminal not wearing clothes that said FedEx on them? A: No. From what I observed, it seems like everybody was wearing it.").

All Delivery Drivers under FedEx's ISP model perform the same job duties subject to the same working conditions in FedEx terminals across California.

**vi.    FedEx Regulates the Hiring and Firing of Delivery Drivers**

In order to become a Delivery Driver, FedEx requires completion of a background check ███████████ a physical/medical exam that ████████████████████████████ ███████████ a drug test that ████████████████████████ ██████████, and a road test. *See* Marron Decl., ██████████████ ████████████████ *see also id.* at ¶ 9 & Ex. 8 [Means Dep. Tr. at 141:24 – 142:5]; ████████████████████████████████████ If Drivers do not pass these checks or tests, they may not pick-up or deliver any FedEx packages. ████████████ █████████████████████████████████ *see also id.* at ¶ 9 & Ex. 8 [Means Dep. Tr. at 142:6-21]. Drivers must further meet ISP-instituted basic minimum requirements, which must be pre-approved by FedEx. *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. 189:18 – 190:22; 192:17 – 193:21; 198:9 – 200:17; 202:12-21; 203:25 – 204:2]. If Drivers do not meet the requirements outlined in the ISPA, they cannot deliver FedEx packages. *See id.*

-11-

1 ████████████████████████████████████

2 ████████████████████████████████████

3 ████████████████████████████████████

4 ████████████████████████████████████

5 ████████████████████████████████████

6 ████████████████████ If a disqualifying event occurs, an ISP

7 must disqualify the Delivery Driver; otherwise, the ISP is deemed to be in breach of the ISP

8 Agreement and FedEx will respond accordingly. *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr.

9 at 176:1-17]; ████████████████████████████████

10 ████████████████████████████████ All

11 of the Delivery Drivers in California during the class period were subject to each of these

12 conditions irrespective of which ISP hired them, pursuant to the ISPA.

13 **vii.    FedEx Manages, Supervises, and Directs Delivery Drivers through the ISPs**

14 FedEx frequently conducts detailed reviews of Delivery Drivers' compliance with the

15 above-mentioned employment practices.

16 ***FedEx Directly Observes Delivery Drivers' Work***: All Deliver Drivers' pickup and

17 delivery activity are automatically printed at FedEx stations after Drivers complete their final stop

18 as indicated on the Star scanners. *See* Marron Decl., ██████████████████

19 ██████████; *id*. at ¶ 9 & Ex. 8 [Means Dep. Tr. at 243:2-15]; *see also* Marron Decl., ¶ 11 & Ex.

20 10 [Plaintiffs' Delivery Activity]. Drivers must enter the FedEx stations at the end of each workday

21 and sign the printed pickup and delivery activity to confirm its accuracy. *See id*; *see also* Hinds

22 Decl., ¶ 23 & Ex. A [Hinds Dep. Tr. 77:20 – 78:11]. FedEx reviews the Drivers' pickup and

23 delivery activity on a regular basis. *See id*.

24 ***Business Discussions***: If Drivers miss pickups or deliveries or if FedEx receives customer

25 complaints about a Driver or a Driver's work, FedEx managers will initiate daily meetings with

26 ISP personnel called "business discussions." *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. at

27 154:11 – 158:13]; █████████████████████████████ The

28 "business discussion" meetings are held to discuss Drivers' work, correct Driver behavior, and

-12-

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

warn ISPs that their contracts are in jeopardy. *See id.,* ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Such

"business discussions" are, in effect, employee coaching and counseling sessions, complete with

warnings about potential contract termination ████████████████████████████████

████████████████████████████████████████████

**Business Review Meetings**: In addition to business discussions to discuss day-to-day

operations, FedEx further conducts "business review meetings" every quarter, where an individual

from FedEx meets with ISPs to review ISP operations and compliance with the ISPA. *See* Marron

Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. at 151:19 – 154:10]; ████████████████████

████████████████████. Depending on the results of its extensive, ongoing reviews of ISP

operations, FedEx can determine that an ISP may no longer operate if they do not meet the specific

requirements of the ISP Agreement. *See id.*, ¶ 9 & Ex. 8 [Means Dep. Tr. at 234:24 – 236:5].

**B.  Wage and Hour Violations**

FedEx strives to meet all customer demands regarding shipping times, and will become

involved if Delivery Drivers do not meet shipping times. *See* Hinds Decl., ¶ 12 & Ex. A [Hinds

Dep. Tr. 74:17-19 ("So we had to – we had to make it within that time frame… If not, we would

get, you know, like chastised about it.")]. These pressures explain why Delivery Drivers skipped

meal periods or could not stop to take a rest break. *See* Powell Decl., ¶ 9 & Ex. B [Powell Dep. Tr.

57:22 – 58:1 ("Q: And how did you form that understanding that you were not able to take those

breaks? A: Because any time we wanted to take our break or something, we was so packed up on

stuff we had to get delivered, so we never got the chance to do it.")]; *see also id.* [Powell Dep. Tr.

140:2-5 ("Q: Does that mean you missed [meal and rest periods] literally every day or something

slightly less than every day? A: Every day. Only time I ate was when I was driving.")].

████████████████████████████████████████████████████████

███████████████████  *See*  Marron  Decl.,  ¶  15.  ████████████████████



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 | *See* Marron Decl., ¶ 15 & Ex. 14; *see also* Declaration of Jeffrey A. Hansen ("Hansen Decl."), ¶¶

28 | 6-7. In sum,

-14-

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ████████████████████████████████████████

5 ██████████████████, Plaintiffs' expert will be able to determine damages regarding

6 overtime hours worked and untaken or interrupted meal and rest periods. *See* Hansen Decl., ¶¶ 13-

7 17. ████████████████████████████████████████████████

8 ████████████████████████ whether Delivery Drivers were working overtime and

9 whether they were relieved of duty for meal and rest periods. *See id.*, ¶ 15. ████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ████████████████████ to identify every missed meal and rest break period and every day

13 that a Driver worked overtime. *See* Hansen Decl., ¶ 16.

14      The Court need not resolve now whether FedEx jointly employed Plaintiffs and the

15 Delivery Drivers, and whether they suffered wage and hour violations under California law. The

16 question for the Court's consideration is whether these issues can be resolved on a class-wide

17 basis. The ISPA and ████████████████ described above are common to the class and make

18 class-wide treatment appropriate in this case.

19      **III.**      **LEGAL STANDARDS**

20      Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two

21 conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity,

22 commonality, typicality, and adequacy of representation), and it also must fit into one of the three

23 categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

24 *Co.*, 559 U.S. 393, 398 (2010). These are the only criteria that must be met. *Briseno v. ConAgra*

25 *Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. 2017) ("declin[ing] to interpose an additional

26 hurdle"—administrative feasibility—"into the class certification process delineated in the enacted

27 Rule"). In ruling on a motion for class certification, "the court 'is bound to take the substantive

28 allegations of the complaint as true.'" *Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist.

LEXIS 10246, at *8 (S.D. Cal. Feb. 12, 2008) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)). California "has a public policy which encourages the use of the class action device." *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981); *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) (same). On a motion for class certification the court makes no findings of fact. *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337, n.3 (N.D. Cal. 2010). "In determining whether class certification is appropriate, the question is not whether . . . [plaintiffs] will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin., LLC*, No. C10-01313 WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011) (internal quotations and citations omitted).

## IV.   ARGUMENT

### A.   The Requirements of Rule 23(a) Are Satisfied

#### 1.   *There is an Ascertainable and Numerous Class*

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Numerosity is generally met if a proposed class has at least 40 members. *See, e.g., Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964).

Common sense accordingly dictates that the class is sufficiently numerous that joinder of all members of the Class is impracticable.

#### 2.   *There Are Common Questions of Law and Fact*

FRCP 23(a)(2) requires the class proponent to show that adjudication of common questions of law or fact would likely drive resolution of the lawsuit.  *Wal-Mart Stores v. Dukes*, 564 U.S.

-16-

338, 350 (2011).  Common questions are generally found by examining the plaintiffs' theory of liability.  *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 809-810 (9th Cir. 2010). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement ...." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted); *see also Dukes*, 131 S.Ct. at 2556. "[A] common contention need not be one that will be answered, on the merits, in favor of the class. Instead, it only must be of such a nature that it is capable of class-wide resolution." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (internal quotation marks, citations, and emphasis omitted). Even "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons*, 754 F.3d at 675 (internal quotation marks omitted).

While Plaintiffs assert several substantive theories of liability (failure to pay overtime premiums, failure to provide meal/rest periods, etc.), all of their theories against FedEx depend upon the key contention, common to all, that FedEx is an "employer" of the Delivery Drivers under the definitions set forth in Wage Order 9(2)(E), (F), and (G).[8] These definitions set forth three alternative tests for determining the existence of an employment relationship. *See Martinez v. Combs*, 49 Cal.4th 35, 64 (2010) ("*Martinez*"). These tests ask whether the employer (1) engages employees to work, thereby creating a common law employment relationship, (2) suffers or permits employees to work, or (3) exercises control over the employees' wages, hours, or working conditions. *Id.* Because these tests are alternatives, Plaintiffs assert three alternative legal theories

---

[8] I.W.C. Wage Order 9 (8 CCR Sec. 11090) applies to all persons employed in the transportation industry.  This Wage Order requires "employers" to provide their "employees" with certain basic minimum standards of labor.  *E.g.*, overtime premiums (Wage Order 9, Sec. 3(A); meal periods (Sec. 11); rest periods (Sec. 12).

I.W.C. Wage Order 9(2)(E) states: "'Employ' means to engage, suffer, or permit to work."

I.W.C. Wage Order 9(2)(F) states: "'Employee' means any person employed by an employer."

I.W.C. Wage Order 9(2)(G) states: "'Employer' means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

under which FedEx must be classified as an employer. The adjudication of each theory raises questions common to all Delivery Drivers.

i.   *Whether FedEx Ground Is an Employer of the Drivers Under the "Engage to Work" Test Presents Common Questions*

The "engage to work" test embodies the "statutory purpose" test set forth in the landmark case of *S .G. Borello & Sons v. Dep't of Indus. Relations*, 48 Cal.3d 341 (1989). *See Dynamex Operations West v. Superior Court*, 4 Cal.5th 903, 943 (2018) ("*Dynamex*"). The *Borello* test applies the common-law "control-of-work-details" test, in which the primary consideration is whether the principal exercises all necessary control over its operation, with due deference to the purposes of the legislation, such as the protection of vulnerable workers. *Id*. at 930.  As a result, "The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute.'" *Id*.

Here, the "nature of the drivers' work" inquiry raises common questions of fact due to the uniformity of the Delivery Drivers' work. The ISPA unambiguously allows FedEx to exercise a great deal of control over the manner in which Delivery Drivers do their jobs. For example, FedEx can and does control the appearance of the Delivery Drivers and their vehicles. The ISPA requires that all Delivery Drivers wear a FedEx-provided ID badge that prominently displays the FedEx logo and ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████ Moreover, Delivery Drivers ██████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████ Such appearance and equipment requirements indicate that FedEx exercises considerable control over the details of the Drivers' work.

FedEx also requires Delivery Drivers to collect FedEx Ground packages from FedEx warehouses in FedEx Ground stations, and the Drivers must deliver those packages to FedEx

-18-

Ground-designated locations to FedEx Ground customers every working day. *See id*. at FXG_000033. The Drivers also pick up packages from FedEx Ground customers and deliver those packages back to the FedEx Ground warehouse.  FedEx ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████ "Drivers deliver[] packages to [FedEx]'s customers, not to their own customers. [FedEx] set[s] the rates charged to customers, bill[s] the customers, and collect[s] payment." *Air Couriers Int'l v. Emp't Dev. Dep't*, 150 Cal.App.4th 923, 59 Cal.Rptr.3d 37, 47 (2007); *see also Toyota Motor Sales U.S.A., Inc. v. Superior Ct.*, 220 Cal.App.3d 864, 269 Cal.Rptr. 647, 653 (1990) (finding a driver to be an employee where the company "determined what would be delivered, when and to whom and what price would be charged"). These facts "reveal the [D]rivers' deliveries were part of [FedEx Ground's] regular business" and "are consistent with employee status and reflect employer control." *Air Couriers*, 59 Cal.Rptr.3d at 47. The Drivers must also ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████ FedEx's pervasive authority to control material aspects of ISP operations and Delivery Drivers' working conditions could lead a jury to conclude that FedEx was an employer of every single one of the Drivers.

Most critically, the degree of control that FedEx Ground retains over the work does not vary by Driver – even if, as FedEx maintains, it retains no control at all.  Nor do any of the numerous "secondary factors" of the *Borello* test vary by driver.[9] Since there are no legally significant variations among the drivers, the same evidence – primarily the ISPA and 30(b)(6) testimony about the ISP business model – will prove the "nature of the work."

The *Borello* test also requires an examination of "the overall arrangement between the

---

[9] Under *Borello*, it is permissible to consider all of the various factors set forth in prior California cases, in Labor Code § 2750.5, and in the out-of-state cases adopting the six-factor test. *Dynamex*, 4 Cal.5th 903, 932.

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

parties," which leads to a completely separate theory of liability under this test, the "Employer of an Employer" theory. Under this theory, "the determination that a purported independent contractor is in fact an employee raises the strong possibility, generally speaking, that the contractor and its employer jointly employ the contractor's employees." *Martinez v. Combs*, 49 Cal.4th 35, 73 (2010). The "overall arrangement" among the parties here is created by a standardized contract ("ISPA") between FedEx Ground and the ISPs. ███████████████, the Delivery Drivers are employees of the ISPs, while the ISPs are independent contractors of FedEx Ground. ██████████████████████████ But the ISPA's characterization of the FedEx Ground-ISP relationship as an "independent contractor" relationship does not necessarily make it so. *Dynamex*, 4 Cal.5th 903, 962; *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 10-11 (2007) ("The parties' label is not dispositive and will be ignored if their actual conduct establishes a different relationship."). And if the ISP is FedEx Ground's *employee*, rather than its independent contractor, then there is the "strong possibility" that FedEx Ground and the ISP are joint employers of the Drivers. *Martinez*, 49 Cal.4th 35, 73.

But what test should be applied to determine whether an ISP is an employee, rather than an independent contractor, of FedEx Ground? *Dynamex* tells us that one test to distinguish between an independent contractor relationship and an employment relationship is the ABC test, which is an application of the Wage Order's "suffer or permit" definition. *Dynamex*, 4 Cal.5th 903, 956-957. Under this test, FedEx Ground would have the burden of proving three factors to establish that the ISP is an independent contractor, including "(B) that the worker performs work that is outside the usual course of the hiring entity's business." *Id.* at 957. Whether this ABC standard applies to ISPs will be a legal question, and thus common to all ISPs. Whether the work that ISPs perform is within the usual course of FedEx Ground's business is also a factual question common to all the ISPs. *See Alexander v. FedEx Ground Package System, Inc.*, 765 F.33d 981, 996 ("The work that the drivers perform, the pickup and delivery of packages, is 'essential to FedEx's core business.'")

When a labor contractor not only supplies workers to a business but also renders service to that business by supervising those workers, that labor contractor is presumptively an employee.

1  *Rinaldi v. Workers' Comp. Appeals Bd.*, 227 Cal.App.3d 756, 765 (1991).  In this case, common

2  evidence (ISPA and 30(b)(6) testimony) will demonstrate that the ISPs not only supplied Drivers

3  to pick up and deliver FedEx Ground's packages, but that they also supervised those Drivers.

4  Marron Decl., ¶ 4 & Ex. 3 [ISPA § 6.4].  Thus, common questions of law and fact will arise in

5  determining whether FedEx Ground and the ISPs are joint employers of the drivers under the

6  Employer of an Employer theory.

7         Finally, the "history and fundamental purposes" of the Wage Order raises common legal

8  issues.  Fundamentally, by mandating minimum standards of labor, the Wage Order not only seeks

9  to protect vulnerable workers, but also to protect law-abiding competitors from a ruthless race-to-

10 the-bottom and to protect the public-at-large from bearing the burden of caring for workers who

11 suffer the effects of working under substandard conditions.  *Dynamex*, 4 Cal.5th 903, 952-953.

12 Whether FedEx Ground falls within the class of "employers" bound by the Wage Order is a legal

13 question, and hence common to all.

14        In sum, the contention that FedEx Ground is an employer of the drivers under the "engage

15 to work" test raises common legal and factual questions, under either a direct *Borello* theory or

16 under an Employer of an Employer theory, that are so substantial that they are apt to drive the

17 resolution of this lawsuit.

18    ii.   *Whether FedEx Ground Is an Employer of the Drivers Under the "Suffer or*

19          *Permit to Work" Test Presents Common Questions*

20        The Wage Order's "suffer or permit to work" test is an alternative test of the employment

21 relationship.  *Martinez*, 49 Cal.4th 35, 64. This "exceptionally broad" test includes within its scope

22 all workers who can reasonably be viewed as working within a business.  *Dynamex*, 4 Cal.5th 903,

23 953.  The basis of liability is the business's knowledge of, or unreasonable failure to discover, an

24 unlawful employment practice occurring within its business, and its failure to exercise its power

25 to prevent the unlawful practice from occurring.  *Martinez*, 49 Cal.4th 35, 69.

26        Whether FedEx Ground had knowledge of, or unreasonably failed to discover, pervasive

27 violations of the Wage Order is a common question of fact. ██████ ██████

28 ████████████████████

-21-

1 ███████████████████████████████████████████████████████

2 In exercising this right, FedEx Ground conducted wage-and-hour audits of ISPs' practices. *See*

3 Marron Decl., ¶ 9 & Ex. 8 [Means Dep. at 109:13 – 110:24]. Thus, whether FedEx Ground knew

4 about or turned a blind eye to these violations present common questions of fact.

5       It is also a common question of fact whether FedEx Ground possessed the power to prevent

6 these violations.  FedEx Ground ████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 ███████████████████████████████

12       Whether FedEx Ground knew or should have known of the wage and hour violations, but

13 failed to exercise its power to prevent them, present substantial common questions of fact.

14     *iii.*   *Whether FedEx Ground Is an Employer of the Drivers Under the "Exercises*

15           *Control Over Wages, Hours, or Working Conditions" Test Presents Common*

16           *Questions*

17       The third test to determine employment relationship is the exercise of control over wages,

18 hours, or working conditions. Any one of the three aspects—wages, hours, or working

19 conditions—is sufficient to impute employer liability under California wage and hour laws. *See*

20 *Martinez*, 49 Cal. 4th at 59.

21       Here, FedEx influences Drivers' working hours by requiring Drivers to deliver packages

22 ███████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████

25 ███████████████████████████ Delivery Drivers must also pick up FedEx packages within

26 a specific window of time negotiated between FedEx and its customers. ████████████

27 ████████████████████; *see also* Hinds Decl., ¶ 12 & Ex. A [Hinds Dep. Tr. at 68:10-14

28 ("A: …You have to completely stop … your residential deliveries to do pickups, and you have to

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE
CLASS NOTICE

1   do it within a time frame")].

2        Moreover, FedEx Ground has control over the working conditions of the Drivers by

3   influencing the hiring and firing of the Drivers. *See Martinez*, 49 Cal. 4th at 76 (hiring and firing

4   are indicia of control). The ISPA shows that FedEx imposes pre-hire screening requirements and

5   procedures, including requiring all Drivers to pass a specified background check, physical exam,

6   drug test, and a pre-approved road test before being permitted to pick-up or deliver FedEx

7   packages. ████████████████████████████████████████████████

8   ████████████████████████████████████ If Drivers do not pass these checks

9   or tests, they may not pick-up or deliver any FedEx packages. ██████████████████

10  ████████████████████████████████████ FedEx also influences

11  the firing, or the "removal" of Delivery Drivers. ███████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ██████████████████████

21        FedEx also influences Deliver Drivers' working conditions by requiring Delivery Drivers

22  to utilize electronic scanners (specifically Star IV or Star V scanners) ████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████ ██████████████████████████████████████

26  ████████████████████████ FedEx Ground exercises effective supervisory control over

27  the Drivers through business discussions even if such control was not formally written into the

28  ISPA. *See Martinez*, 49 Cal. 4th at 76 ("Supervision of the work, in the specific sense of exercising

-23-

control over how services are performed, is properly viewed as one of the "working conditions" mentioned in the wage order.").

All of the Delivery Drivers in California during the class period were subject to each of these conditions irrespective of which ISP hired them, pursuant to the ISPA. Thus, the Wage Order's three alternative tests for employer liability – engage to work, suffer or permit to work, and exercises control over wages, hours, or working conditions – each raise significant questions which are common to all drivers, such that class certification is appropriate.

### 3. *The Class Representatives' Claims are Typical of the Class Claims*

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted). Thus, "[t]o assess whether or not the representative's claims are typical, the Court examines 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW MANX, 2011 WL 10962891, at *3 (C.D. Cal. Apr. 12, 2011) ["*Brazilian Blowout*"] (quoting *Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotation omitted).

In this case, each named Plaintiff worked as a Delivery Driver pursuant to the ISPA and drove vehicles with a manufactured GVWR of 10,000 pounds or less. *See* Dkt. No. 103 (Order

-24-

denying FedEx's MSJ in part and finding Plaintiffs Hinds and Powell drove vehicles with manufactured GVWR of 10,000 pounds or less). The named Plaintiffs allege that FedEx Ground's ISP business model caused Drivers, including themselves, to work under the same substandard working conditions, and they seek the same remedies for all Drivers. The claims that Plaintiffs allege are typical because these claims could have been alleged by virtually any of the members of the putative class.

### 4. *The Named Plaintiffs Will Adequately Represent the Class*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Plaintiffs have demonstrated that they and their counsel satisfy these criteria. Plaintiffs have standing, have no conflict of interest with other class members, are aware of their obligations as a class representatives, and have prosecuted and will continue prosecuting the action vigorously on behalf of the class. (*See* Hinds Decl., ¶¶ 32-33; *see also* Powell Decl., ¶¶ 32-33); *Brazilian Blowout*, 2011 WL 10962891, at *5 (class representatives adequate where they submitted declarations stating "they understand their responsibilities as class representatives that no conflicts exist between their interests and other members of the class, and that they intend to vigorously pursue all claims asserted in this lawsuit"). Plaintiffs do not possess any interests that conflict with those of the proposed Class because, like absent Class members, Plaintiffs suffered wage and hour employment violations, lost money because they were not paid as required by law, and are motivated to establish Defendants' liability and attain remedies equally applicable to and beneficial for the Class. *See generally*, Hinds Decl. & Ex. A; *see generally*, Powell Decl. & Ex. B. Plaintiffs are familiar with the underlying legal claims asserted in this case and have stayed informed about its status. *See* Hinds Decl., ¶ 32; *see also* Powell Decl., ¶ 32.

Plaintiffs' counsel are adequate class counsel because they are experienced in wage-and-hour litigation, have no conflicts, and have prosecuted and will continue prosecuting the action

vigorously on behalf of the class. (Marron Decl., ¶¶ 18-47 & Ex. 17 [Firm Resume]; Declaration of Timothy Cohelan in Support of Plaintiffs' Motion for Class Certification ("Cohelan Decl."), ¶¶ 4-13 & Ex. A attached thereto; Declaration of Joseph Clapp in Support of Plaintiffs' Motion for Class Certification ("Clapp Decl."), ¶¶ 3-6 & Ex. Resume attached thereto; *Martin v. Monsanto Co.,* No. EDCV162168JFWSPX, 2017 WL 1115167, at *5 (C.D. Cal. Mar. 24, 2017). The Law Offices of Ronald A. Marron; Cohelan, Khoury & Singer; and Aiman-Smith & Marcy demonstrate the ability to diligently pursue the instant claims on behalf of Plaintiffs and the proposed Class and have sufficient resources to do so successfully. (Marron Decl., ¶¶ 18-47 & Ex. 17; Cohelan Decl., ¶¶ 4-13 & Ex. A; Clapp Decl., ¶¶ 3-6 & Ex. Resume). The adequacy requirement is therefore also satisfied.

## B.     The Requirements of Rule 23(b)(3) Are Satisfied

### 1.     *Predominance*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

#### a.     *Common Questions Predominate Over Any Individualized Issues*

As explained below, resolution of each claim alleged by Plaintiffs will turn on class-wide issues that predominate over any individual issues. "When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 398-99 (C.D. Cal. 2008), aff'd, 375 F. App'x 734 (9th Cir. 2010). Where an employer has uniformly applied workplace policies, as here, predominance is "easily

-26-

established." *Id.*; *see also Ortega v. J.B. Hunt Transp., Inc.,* 258 F.R.D. 361, 367 (C.D. Cal. 2009) (class actions are routinely certified where "the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members").

i.   *Common Issues Predominate with Respect to the Meal Period and Rest Break Claims*

California employers have an affirmative "obligation to provide" meal periods to their employees and "must authorize and permit" rest breaks. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1031, 1040 (2012). "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes," and "may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes ...." Labor Code § 512(a); *see* I.W.C. Wage Order No. 5-2001 § 11.21.[10] In addition, rest breaks must be provided "insofar as practicable … in the middle of each work period," at a rate of 10 minutes for every four hours "or major fraction thereof." I.W.C. Wage Order No. 5-2001 § 12. Thus, "[e]mployees are entitled to 10 minutes of rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." If an employer fails to comply with any of these obligations, it must "pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest … period is not provided." Labor Code § 226.7(c).

An employer's class-wide liability for meal and rest break violations can be established through class-wide proof of the employer's failure to authorize meal and rest periods. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 961-962 (9th Cir. 2013); *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701, 726 (2014) (class certification appropriate where plaintiffs' theory was that employer "violated wage and hour requirements by failing to adopt a policy

---

[10] Employees who work shifts between five and six hours, and between 10 and 12 hours, may waive a meal period with the "mutual consent" of their employer, Labor Code § 512(a), but FedEx has no policy authorizing such waivers.

*Hinds v. FedEx Ground Package System, Inc., et al.*, Case No. 4:18-cv-01431-JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, TO APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND APPROVE CLASS NOTICE

authorizing and permitting meal and rest breaks"). Here, FedEx Ground has admitted that it never authorized meal and rest periods. *See* Marron Decl., ¶ 16 & Ex. 15 [FedEx's Responses to RFA Nos. 22-26]. Thus, FedEx Ground "would become liable to the class upon a determination that its uniform lack of a meal and rest policy violated the applicable Wage Order." *Benton*, 220 Cal.App.4th at 729-730.

The SAC alleges, "Plaintiffs and the other drivers generally worked for more than six hours in a workday without being provided 30-minute, uninterrupted, off-duty meal periods." SAC ¶ 22. Further, "Defendants failed to authorize and permit Plaintiff[s] and the other drivers to take paid rest periods." SAC ¶ 18. As Plaintiff Powell explained during his deposition, "every job I worked, we get meals – we get a break … and we get our lunch, but we didn't get none of that here." *See* Powell Decl., ¶ 28 & Ex. B [Powell Dep. Tr. at 56:5-8]. Defendants failed to train Delivery Drivers on meal and rest break policies. *See* Hinds Decl., ¶ 9 & Ex. A [Hinds Dep. Tr. at 46:6-12; 48:7-13; 50:5-17]. Plaintiff Powell explained during his deposition that he and his coworkers were never told to "take our lunch break or anything. [Management] just, basically, said get all of these packages, basically, done." *See* Powell Decl., ¶ 8 & Ex. B [Powell Dep. Tr. at 60:22-25]; *see also* Powell Decl., ¶ 10 & Ex. B [Powell Dep. Tr. at 60:6-9 ("A: …everybody that I trained with, none took lunches or breaks. Everybody was doing the same thing, so I figured that was more like what you had to do.")].

Plaintiffs' meal and rest break claims present several predominating common issues, as FedEx Ground's liability can be established on a class-wide basis by its admission that it did not authorize meal periods or rest periods. *Brinker*, 53 Cal.4th 1003, 1033 ("An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry.  If it does not . . . it has violated the wage order and it liable."). Whether FedEx's failure to authorize meal periods and rest breaks establishes liability is a common question that can be resolved on class-wide basis. Certification is therefore appropriate. *See Abdullah*, 731 F.3d at 961-62 (quoting *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal.App.4th 220, 235 (2013)) (where an employer's policy fails affirmatively to provide all required meal and rest breaks, "'[w]hether or not the employee was able to take the required break goes to damages.'").

As an additional theory of liability, evidence of practices that discourage or preclude lawful breaks will be common to the class and are appropriate for certification. Here, Plaintiff Hinds testified that she was expected to make about 80 stops on average per day and about 110 stops during holidays. *See* Hinds Decl., ¶ 29 & Ex. A [Hinds Dep. Tr. at 76:20 – 77:2]. Further, Delivery Drivers were expected to return to the station at the end of the workday only when each of their packages had been delivered. *See* Hinds Decl., ¶ 30; *see also* Powell Decl., ¶ 30. If Drivers missed a pick-up or delivery, FedEx initiated business discussions with ISPs to discuss and correct the Drivers' work. *See* Marron Decl., ¶ 9 & Ex. 8 [Means Dep. Tr. at 154:11 – 158:13]; *see also* Marron Decl., ¶ 12 & Ex. 11 [Business Discussion Workbook]; *see also* Marron Decl., ¶ 13 & Ex. 12 [Business Discussion Records]. As a result, many Drivers skipped meal periods and rest breaks due to the pressure to get all packages delivered on time. *See* Hinds Decl., ¶ 12 & Ex. A [Hinds Dep. Tr. 74:17-19 ("So we had to – we had to make it within that time frame… If not, we would get, you know, like chastised about it.")]; *see also* Powell Decl., ¶ 9 & Ex. B [Powell Dep. Tr. 57:22 – 58:1 ("Q: And how did you form that understanding that you were not able to take those breaks? A: Because any time we wanted to take our break or something, we was so packed up on stuff we had to get delivered, so we never got the chance to do it.")]. Liability can therefore be established on a class-wide basis through evidence of these practices that discourage or preclude lawful breaks. *See, e.g., Pina v. Con-Way Freight, Inc*., No. C 10-00100 JW, 2012 WL 1278301, at *7 (N.D. Cal. Apr. 12, 2012) (certifying class where "informal policies of discouraging the taking of breaks would likely be susceptible to common proof..."); *Jaimez v. Daiohs USA, Inc*., 181 Cal. App. 4th 1286, 1301, 1305 (Cal. Ct. App. 2010) (certification appropriate based on common policy of giving employees so much work they were unable to take breaks). "[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Brinker*, 53 Cal.4th at 1040 (citing *Cicairos v. Summit Logistics, Inc*., 133 Cal. App. 4th 949, 962-63 (2005); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) ("informal anti-meal-break policy enforced through ridicule or reprimand would be illegal") (quotation marks omitted)).

Finally, the amount of resulting damages could be readily determined through data from

1    the ▓▓▓▓▓▓▓ which reveal whether Delivery Drivers took breaks and, just as important,

2    when each break was missed or untimely. ▓▓▓▓▓▓▓▓▓ data from FedEx's Vehicle

3    Management System also show which vehicles were used by Delivery Drivers for each shift and

4    whether the vehicle had a manufactured GVWR of 10,000 pounds or less. *See* Hansen Decl., ¶ 6.

5    Certification is therefore appropriate.

6          ii.    <u>Common Issues Predominate with Respect to the Overtime Claims</u>

7          Under California law, "[a]ny work in excess of eight hours in one workday … shall be

8    compensated at the rate of no less than one and one-half times the regular rate of pay for an

9    employee." Labor Code § 510(a); *see id*. § 1194; I.W.C. Wage Order No. 5-2001 § 3(A)(1). A

10   "workday" is "any consecutive 24-hour period commencing at the same time each calendar day."

11   Labor Code § 500(a); *see* I.W.C. Wage Order No. 5-2001 § 2(U).

12         The SAC alleges that Plaintiffs and other Delivery Drivers regularly worked more than 8

13   hours in a workday, more than 12 hours in a workday, and more than 40 hours in a workweek. *See*

14   SAC ¶ 22. During her deposition, Plaintiff Hinds testified that she typically worked 10-hour

15   workdays as a Delivery Driver, and worked 12-hour days or more during the holidays and peak

16   season. *See* Hinds Decl., ¶ 10 & Ex. A [Hinds Dep. Tr. at 91:22 – 93:19]. Plaintiff Powell testified

17   that he similarly worked 10-hour days as a Delivery Driver for FedEx and up to 13 hours during

18   holidays. *See* Powell Decl., ¶ 11 & Ex. B [Powell Dep. Tr. at 81:14 – 83:15].This class-wide

19   practice is easily provable through the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and all Drivers' DOT reportable hours. *See* Hansen Decl., ¶¶ 6-16.

21         In addition, Defendants did not pay Plaintiffs or the other drivers any overtime premiums

22   for the overtime hours that they worked. (SAC ¶ 23; *see* Hinds Decl., ¶ 26 & Ex. A [Hinds Dep.

23   Tr. 239:10-19 ("A: … everything was just a $900 check. It was just a flat line across the board.

24   There was no overtime added, even if I went over 10 hours a day or over the eight-hour period.")];

25   *id*. at ¶ 27 & Ex. A [Hinds Dep. Tr. at 98:23 – 99:9]; *id*. at ¶ 28 & Ex. A [Hinds Dep. Tr. 101:9 –

26   102:23]; *see also* Powell Decl., ¶ 27 & Ex. B [Powell Dep. Tr. 28:9-21 ("A: Like, if I work over

27   40 hours, I'll get regular salary, but if I miss a day or something, then I'll get less. [It's] [l]ike, I

28   was on hourly when I worked less than 40 hours, but I was on salary if I worked over 40 hours …

-30-

1   Because if it was hourly and I go over 40, it would have been overtime, but … I didn't get overtime,

2   it was just 40. And [when] I missed that one day … it was less than that.")]. Whether class members

3   were paid any overtime premiums for the overtime hours they worked can be determined by

4   viewing ISP payroll records. *See* Wage Order 9, Sec. 7(A)(4)-(5) (employer must keep payroll

5   records). Since the review of such records would be a manageable means of determining the

6   entitlement to overtime premiums, common issues such as those relating FedEx Ground's status

7   as an employer predominate, and certification is appropriate. *See Abdullah*, 731 F.3d at 966-67;

8   *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Benton v. Telecom*

9   *Network Specialists, Inc.*, 220 Cal. App. 4th 701, 723, 741 (2014).

10          *iii.*      <u>*Common Issues Predominate with Respect to Plaintiffs' Derivative Claims*</u>

11          Plaintiffs also seek certification of several claims that are derivative of their claims that

12   Defendants failed to pay them overtime wages. These derivative claims should be certified for the

13   same reasons as the underlying claims.

14          California law requires that "[e]very employer shall" provide each employee "an accurate

15   itemized statement in writing showing" a variety of required information, including all "wages

16   earned" and "the name and address of the legal entity that is the employer ...." Labor Code §

17   226(a); *see* I.W.C. Wage Order No. 5-2001 § 7. Where an employer knowingly and intentionally

18   fails to provide accurate and complete information, its employees who are thereby injured are

19   entitled to statutory penalties. Labor Code § 226(e)(1), (2)(A)-(B). Here, "Defendants often failed

20   to furnish Plaintiffs and other drivers with an accurate itemized statement in writing on the regular

21   paydays showing gross wages earned, total hours worked, net wages earned, and all applicable

22   hourly rates of pay in effect during the pay period and the corresponding number of hours worked

23   at each hourly rate." (SAC ¶ 27). Whether Defendants violated Labor Code § 226 by failing to

24   provide this information will turn on the common question whether FedEx is an employer of the

25   Delivery Drivers and whether it acted knowingly and intentionally. Damages can be calculated by

26   assessing how many unlawful wage statements each Delivery Driver received based on failure to

27   pay overtime wages.

28          Thus, Plaintiffs' claims under Labor Code § 226 for Defendants' failure to provide

-31-

itemized wage statements that "accurate[ly]" show total "wages earned" should be certified because Delivery Drivers' wage statements do not reflect all overtime wages due. *See, e.g., Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 441 (C.D. Cal. 2014) (certifying inaccurate wage statement claims); *Ortega*, 2012 WL 6708161 at *4 (same). Similarly, Plaintiffs' claims for failure to pay all wages due upon discharge or resignation under Labor Code § 203 based on Plaintiffs' overtime claims, and unfair business practices under Bus. & Prof. Code § 17200, are each partially derivative of claims discussed above. *See, e.g., Boyd*, 300 F.R.D. at 442 (certifying similar claims); *Dilts*, 267 F.R.D. at 640 (same).

   *iv.* *Damages*

  All overtime and meal period and rest break damages can be calculated using ███ ██████████████████████████ and ISP payroll records. *See* Hansen Decl., ¶ 16. ████████ can also be used to determine the manufactured GVWR of vehicles used by Delivery Drivers for each shift. *Id*. at ¶ 6. Damages for Defendants' wage statement violations can be calculated using the standard statutory rates. *See* Labor Code § 226(e)(1). Damages and penalties for the derivative claims can be calculated in the same fashion as the corresponding primary claims or by relying on standard statutory rates. *See, e.g.,* Labor Code § 203 (penalties for failure to pay all wages due upon termination based on employee's wage rate).

  In this case, the damages calculations will principally rest on class-wide data, but even if that were not true, "'[i]n this circuit … damage calculations alone cannot defeat class certification.'" *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1167 (9th Cir. 2014) (quoting *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 513 (9th Cir. 2013)); *see also Yokoyama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1089 (9th Cir. 2010) ("The potential existence of individualized damage assessments … does not detract from the action's suitability for class certification.").

  **2.** **Superiority**

  In addition to predominance, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of a controversy." Fed. R. Civ. P. 23(b)(3). The superiority analysis focuses on "efficiency and economy[.]" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The superiority inquiry also assesses

whether the objective of the class action procedure will be achieved and compares alternative mechanisms for dispute resolution. *See Hanlon*, 150 F.3d at 1023. Courts are afforded wide discretion to evaluate superiority because they are "in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

In employment cases involving low-wage workers like this, the alternative to a class action is no case at all.

### i. <u>Class Members Have Limited Interest in Individually Controlling Separate Actions</u>

Class treatment is appropriate because the "risks entailed in suing one's employer are such that the few hardy souls who come forward should be permitted to speak for others when the vocal ones are otherwise fully qualified." *Ste. Marie v. E. R.R. Ass'n*, 72 F.R.D. 443, 449 (S.D.N.Y. 1976). Where, as here, the cost of many individual actions would be prohibitively high and the damages at issue relatively modest, few if any class members would seek to vindicate their rights individually. *See Leyva*, 716 F.3d at 515; *Amchem*, 521 U.S. at 617; *Hanlon*, 150 F.3d at 1023. Resolving the common issues in this class action lawsuit would provide substantial efficiencies for the parties and the court in the management of the claims of the class members and, through the vigorous enforcement of the State's wage and hour laws, prevent the failure of justice that would occur if these claims were never litigated, which for the vast majority of the class members is the practical alternative to a class procedure.

### ii. <u>It is Desirable to Concentrate Class Members' Claims in this Forum</u>

Plaintiffs are aware of two cases in this forum, *Overpeck v. FedEx Corp., et al.*, Case No. 18-cv-07553-PJH (N.D. Cal. Apr. 1, 2020) and *Dolan v. FedEx Ground Package System, Inc.*, Case No. 5:18-cv-06934 (N.D. Cal. Nov. 15, 2018), and other state court cases asserting similar claims. However, this case is the first to have filed a class action complaint against FedEx Ground

and the first to have completed sufficient discovery to move for class certification. It is logical and efficient to concentrate litigation of class members' California state law claims in this forum, given that the claims involve California law and all Delivery Drivers were employed in this State. Further, it is desirable to concentrate the litigation of these claims on behalf of California Class members in a California federal court. Therefore, the superiority requirement is satisfied.

     *iii.*    <u>*Class-wide Resolution of Class Members' Claims Will be Manageable*</u>

Class litigation will remain manageable due to the predominance of common issues. As demonstrated above, the many common, dispositive issues in this case can be adjudicated on a class-wide basis using common evidence, including the scanner data and common ISP Agreement, and any individualized damages can be adjudicated after class-wide resolution of liability. Moreover, any individual issues, such as days on which drivers drove small vehicles and days which they suffered wage and hour violations can be resolved through recourse to Defendants' records, and that recourse to such records renders this case manageable. *See, e.g., Abdullah*, 731 F.3d 952, 966-967.

Class certification here promotes judicial efficiency because it permits Plaintiffs' and Class members' common claims and issues to be tried once with a binding effect on all parties. A class action lawsuit would be superior to any other method for achieving the fair and efficient adjudication of this controversy.

**C.    Alternatively, the Court May Adjudicate Common Issues on a Class-wide Basis Pursuant to Rule 23(c)(4)**

Even if the Court were to conclude that the requirements of Rule 23(b)(3) are not met, the Court should still utilize the resource-conserving mechanism available under Rule 23(c)(4) to adjudicate those issues capable of class-wide resolution separately before turning to any remaining individualized issues. *See* Fed. R. Civ. P. 23(c)(4); *see, e.g., Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 544 (N.D. Cal. 2012). As the Ninth Circuit has explained, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule [23(c)(4)] and proceed with class treatment of these particular issues." *Valentino*

-34-

1    *v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Thus, at a minimum, the Court should

2    certify for class-wide resolution under Rule 23(c)(4) the common issue of whether FedEx is a joint

3    employer of Delivery Drivers, and any other common issue the Court finds amendable to class-

4    wide resolution.

5        **D.    The Court Should Approve Notice to the Class**

6        Under Rule 23(c)(2)(B), for "any class certified under Rule 23(b)(3), the court must direct

7    to class members the best notice that is practicable under the circumstances, including individual

8    notice to all members who can be identified through reasonable effort." Filed concurrently with

9    this Motion is the Declaration of Gajan Retnasaba detailing a Notice Plan for this case, which

10   includes direct notice sent to class members' physical addresses and email addresses. *See*

11   Retnasaba Decl., ¶¶ 3-19. The Court should also order FedEx to post notice at FedEx stations

12   where Delivery Drivers work at no cost to the class, as this will increase the reach of class notice.

13   *See id.* at ¶ 10.

14       Plaintiffs therefore here include draft notices to the class, in summary and detailed form,

15   notifying them of the certification of this class, how it will affect their rights, and the deadline to

16   opt-out of the class, as required under Rule 23(c)(2)(B). *See* Marron Decl., ¶ 17 & Ex. 16. The

17   short notice directs class members to the claims administrator-created web site, where the detailed

18   notice may be viewed. The notices contain all information required under Rule 23(c)(2)(B) and

19   are written in neutral language. *See id.* The Court should approve the Notice Plan, the proposed

20   Notices, and set an opt-out date for three months after its order certifying the class.

21                          **V.    CONCLUSION**

22       For the foregoing reasons, Plaintiffs request the Court to grant class certification on all

23   requested claims, to grant subclass certification on the waiting time claim, to appoint Michelle

24   Hinds and Tyrone Powell as Class Representatives, to appoint the Law Office of Ronald A.

25   Marron, Cohelan Khoury and Singer, and Aiman-Smith & Marcy as co-lead Class Counsel, and

26   to approve the content of and procedure for class notice.

27

28

Dated:     November 30, 2020                    Respectfully submitted,


                                               /s/ *Ronald A. Marron*
                                               RONALD A. MARRON

                                               **LAW OFFICES OF RONALD A. MARRON,
                                               APLC**
                                               RONALD A. MARRON
                                               MICHAEL HOUCHIN
                                               LILACH HALPERIN
                                               651 Arroyo Drive
                                               San Diego, California 92103
                                               Telephone: (619) 696-9006
                                               Facsimile: (619) 564-6665

                                               **COHELAN KHOURY & SINGER**
                                               Timothy D. Cohelan (SBN 60827)
                                               tcohelan@ckslaw.com
                                               Isam C. Khoury (SBN 58759)
                                               ikhoury@ckslaw.com
                                               J. Jason Hill (SBN 179630)
                                               jhill@ckslaw.com
                                               605 C Street, Suite 200
                                               San Diego, CA 92101
                                               Tel.: (619) 595-3001/Fax: (619) 595-3000

                                               **AIMAN-SMITH & MARCY**
                                               Joseph Clapp (SBN 99194)
                                               jc@asmlawyers.com
                                               7677 Oakport Street, Suite 1150
                                               Oakland, CA 94621
                                               Tel.: (510) 590-7115/Fax: (510) 562-6830
                                               ***Counsel for Plaintiffs and the Putative Class***