1  Brandy T. Cody, State Bar No. 196923
   Email: bcody@fisherphillips.com
2  FISHER & PHILLIPS LLP
   111 SW Fifth Avenue, Suite 4040
3  Portland, OR 97204
   Telephone:    (503) 242-4262
4  Facsimile:    (503) 242-4263

5  Jessica G. Scott, *appearing pro hac vice*
   Email: scott@wtotrial.com
6  WHEELER TRIGG O'DONNELL LLP
7  370 Seventeenth Street, Suite 4500
   Denver, CO 80202-5647
8  Telephone: (303) 244-1800
   Facsimile: (303) 244-1879
9
   [ADDITIONAL COUNSEL LISTED
10 ON NEXT PAGE]

11 Attorneys for Defendant
   FEDEX GROUND PACKAGE SYSTEM, INC.

12          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
13                    OAKLAND DIVISION

14

15 MICHELLE HINDS, an individual, and          Case No. 4:18-cv-01431-JSW (AGT)
   TYRONE POWELL, an individual, on behalf
16 of themselves individually, and on behalf of all
   others similarly situated,                  **DEFENDANT FEDEX GROUND**
17                                              **PACKAGE SYSTEM, INC.'S MOTION TO**
                Plaintiffs,                     **STRIKE PLAINTIFFS' EIGHTH CAUSE**
18                                              **OF ACTION UNDER THE PRIVATE**
          vs.                                   **ATTORNEYS GENERAL ACT;**
19                                              **MEMORANDUM OF POINTS AND**
   FEDEX GROUND PACKAGE SYSTEM,                 **AUTHORITIES**
20 INC., a Delaware corporation; and BAY RIM
   SERVICES, INC., a California corporation,
21                                              **Hearing:**
                Defendants.                     Date:     January 7, 2022
22                                              Time:     9:00 a.m.
                                                Ctrm:     5
23                                              Judge:    Hon. Jeffrey S. White

24

25

26

27

28

---

Sean F. Daley, State Bar No. 272493
Email: sdaley@fisherphillips.com
**FISHER & PHILLIPS LLP**
444 S Flower Street, Suite 1500
Los Angeles, CA 90071-2957
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-entitled Court, located at Oakland Courthouse, Courtroom 5 – 2nd Floor, 1301 Clay Street, Oakland, California 94612, Defendant FedEx Ground Package System, Inc. ("FedEx Ground") will and hereby does move this court for an order striking or dismissing Plaintiffs Michelle Hinds and Tyrone Powell's Eighth Claim for Relief under the California Labor Code Private Attorneys General Act and the portions of Plaintiffs' Second Amended Complaint referring to the Eighth Cause of Action or to penalties sought pursuant to California Labor Code § 2698 *et seq.* ("PAGA"). (*See* 2d Am. Compl. ¶¶ 33-41, ECF No. 76; *see also id.* Prayer for Relief at 7.)

Plaintiffs' cause of action under PAGA should be stricken or dismissed under the Court's inherent authority for two reasons. First, the claim presents insurmountable manageability problems which this Court already recognized when it denied Plaintiffs' Motion for Class Certification. (Order Denying Pls.' Mot. for Class Cert. 15, ECF No. 171.) The Court can and should strike or dismiss this unmanageable PAGA claim. *See Salazar v. McDonald's Corp.*, 2017 WL 88999, at *7-9 (N.D. Cal. Jan. 5, 2017); *Wesson v. Staples the Off. Superstore, LLC*, --- Cal.Rptr.3d ----, 2021 WL 4099059, at *11 (Cal. Ct. App. Sept. 9, 2021). Second, if the Court does not strike Plaintiffs' PAGA claim as unmanageable, it should still dismiss the claim because Plaintiffs lack standing to pursue their PAGA claim against any Service Provider other than Bay Rim, the Service Provider for whom they worked. *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 82 (2020) (citing Cal. Lab. Code § 2699(a)); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 673-4 (9th Cir. 2021).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Jessica Scott, the concurrently filed [Proposed] Order, the records and files in this action, including the records from Plaintiffs' Motion for Class Certification (ECF Nos. 113 to 113-25) and Defendant FedEx Ground Package System, Inc.'s Opposition to Plaintiffs' Motion for Class Certification (ECF Nos. 134 to 135-18), and any other matters of which this Court may take judicial notice.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... iii

SUMMARY OF THE ARGUMENT ............................................................................................ v

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 1

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT ............................................................................................................................. 3

I.      PLAINTIFFS' PAGA CLAIM SHOULD BE STRICKEN AS
        UNMANAGEABLE ......................................................................................................... 3

        A.      The Court Has Inherent Authority to Ensure that Plaintiffs' PAGA Claim
                Will Be Manageable at Trial .............................................................................. 3

        B.      Plaintiffs' Expansive PAGA Claim Is Unmanageable ........................................ 6

                1.      Resolution of Meal and Rest Break Claims Requires
                        Individualized Assessments for Each Driver ............................................. 8

                2.      Resolution of Overtime Claims Requires Individualized
                        Assessments ........................................................................................... 11

                3.      Whether FedEx Ground Violated Overtime and Break Laws
                        Requires Individualized Assessments Regarding Vehicles Driven ........ 13

II.     PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF
        DRIVERS AT OTHER SERVICE PROVIDERS ........................................................... 14

CONCLUSION ....................................................................................................................... 15

FEDEX GROUND'S MOTION TO STRIKE PLAINTIFFS' PAGA CLAIM; MEM. OF P. & A.
CASE NO. 4:18-cv-01431-JSW (AGT)

**CASES**

*Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Super. Ct.*,
46 Cal. 4th 993 (2009) ............................................................................. 14

*Amey v. Cinemark USA, Inc.*,
No. 13-CV-05669-WHO, 2015 WL 2251504
(N.D. Cal. May 13, 2015), *rev'd on other grounds*, 705 F. App'x 644
(9th Cir. 2017) ............................................................................................ 5

*Amiri v. Cox Commc'ns Cal., LLC*,
272 F. Supp. 3d 1187 (C.D. Cal. 2017) .................................................... 5

*Arias v. Super. Ct.*,
46 Cal. 4th 969 (2009) ............................................................................... 4

*Audler v. CBC Innovis, Inc.*,
519 F.3d 239 (5th Cir. 2008) ................................................................... 15

*Bowers v. First Student, Inc.*,
No. 2:14-cv-8866-ODW EX, 2015 WL 1862914
(C.D. Cal. Apr. 23, 2015) .......................................................................... 5

*Brinker Rest. Corp. v. Super. Ct.*,
53 Cal. 4th 1004 (2012) ............................................................................. 8

*Brown v. Am. Airlines, Inc.*,
No. CV 10–8431–AG (PJWx), 2015 WL 6735217
(C.D. Cal. Oct. 5, 2015) ........................................................................... 13

*Cardenas v. McLane Foodservice, Inc.*,
No. SACV 10–473 DOC (FFM), 2011 WL 379413
(C.D. Cal. Jan. 31, 2011) ........................................................................... 4

*Cooper v. Noble Casing, Inc.*,
No. 15-cv-1907-WJM-CBS, 2016 WL 6525740
(D. Colo. Nov. 3, 2016) ............................................................................ 14

*Deitz v. Bouldin*,
136 S.Ct. 1885 (2016) ................................................................................ 3

*Duran v. U.S. Bank Nat'l Assoc.*,
59 Cal. 4th 1 (2014) ................................................................................... 4

*Hibbs–Rines v. Seagate Technologies, LLC*,
No. C 08-05430 SI, 2009 WL 513496
(N.D. Cal. March 2, 2009) .......................................................................... 4

*Kim v. Reins Int'l Cal., Inc.*,
9 Cal. 5th 73 (2020) ................................................................................. 14

iii

*Lindsey v. Normet*,
    405 U.S. 56 (1972)................................................................................................4

*Litty v. Merrill Lynch & Co.*,
    No. CV 14-0425 PA PJWX, 2014 WL 5904904
    (C.D. Cal. Nov. 10, 2014)....................................................................................6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................15

*Magadia v. Wal-Mart Assocs., Inc.*,
    999 F.3d 668 (9th Cir. 2021................................................................................15

*Ortiz v. Amazon.com LLC*,
    No. 17-CV-03820-JSW, 2020 WL 5232592
    (N.D. Cal. Sept. 2, 2020) ..........................................................................v, 3, 4

*Ortiz v. CVS Caremark Corp.*,
    No. C-12-05859 EDL, 2014 WL 1117614
    (N.D. Cal. Mar. 19, 2014)...................................................................................5

*Salazar v. McDonald's Corp.*,
    2017 WL 88999 (N.D. Cal. Jan. 5, 2017)................................................3, 4, 5

*Senne v. Kansas City Royals Baseball Corp.*,
    No. 14-CV-00608-JCS, 2021 WL 3129460
    (N.D. Cal. July 23, 2021) ..................................................................................15

*Wesson v. Staples the Off. Superstore, LLC*,
    --- Cal.Rptr.3d ----, 2021 WL 4099059
    (Cal. Ct. App. Sept. 9, 2021) ......................................................................v, 3, 4, 5

**STATUTES**

Cal. Lab. Code § 2699(a).......................................................................................v, 3, 14

Cal. Lab. Code § 2699(c)................................................................................................14

FEDEX GROUND'S MOTION TO STRIKE PLAINTIFFS' PAGA CLAIM; MEM. OF P. & A.
CASE NO. 4:18-cv-01431-JSW (AGT)

## **SUMMARY OF THE ARGUMENT**

This Court has already determined that Plaintiffs cannot represent the nearly 20,000 drivers employed by 580 different Service Providers in California to adjudicate their California Labor Code claims on a classwide basis. (Order Denying Pls.' Mot. for Class Cert. ("Class Cert. Denial") 15-16, ECF No. 171.) Despite the Court's finding that liability for violation of California's overtime and meal and rest break laws would require highly individualized inquiries, Plaintiffs now seek to adjudicate those same alleged violations on a "representative basis"—on behalf of the same 20,000 drivers—under the California Private Attorneys General Act. Under PAGA, an "aggrieved employee" may recover civil penalties for Labor Code violations "on behalf of himself or herself and other current or former employees . . . against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(a), (g)(1). To do so, Plaintiffs must prove Labor Code violations for each individual on whose behalf Plaintiffs seek to recover penalties.

The Court has inherent authority to strike PAGA claims that would require "numerous individualized determinations" that cannot be tried fairly and efficiently. *Ortiz v. Amazon.com LLC,* No. 17-CV-03820-JSW, 2020 WL 5232592, at *1 (N.D. Cal. Sept. 2, 2020) (White, J.); *Wesson v. Staples the Off. Superstore, LLC*, --- Cal.Rptr.3d ----, 2021 WL 4099059, at *11 (Cal. Ct. App. Sept. 9, 2021). It should exercise that discretion here. Resolving whether any of the 20,000 drivers suffered the alleged violations and, if so, how many, in what form, and to what extent will require <u>thousands</u> of driver-specific inquiries, requiring the trier of fact to weigh competing testimony and evidence by complaining drivers and their Service Providers. Plaintiffs cannot point to a single uniform policy or source of information that would provide answers to all the myriad of questions necessary to determine liability. As such, Plaintiffs' PAGA claim is not manageable, cannot be fairly and efficiently tried, and should be stricken.

Plaintiffs' overbroad PAGA claim fails for another reason—they lack standing to pursue claims for Labor Code violations against Service Providers who did not employ them, or for violations they did not suffer. Plaintiffs worked only for Bay Rim, not any of the other 580 Service Providers that had vastly different pay policies and practices.

# **FACTUAL AND PROCEDURAL BACKGROUND**

As the Court knows from the class certification proceedings, FedEx Ground contracts with hundreds of Service Providers in California—around 580 independently owned and operated businesses—to provide the first and last mile pickup and delivery services between FedEx Ground's customers and stations. (Means Decl. ¶¶ 3, 7, Ex 1.)[1] Plaintiffs were drivers for one such Service Provider, Bay Rim Services, Inc. (2d Am. Compl. ¶¶ 2-4, 7, ECF No. 76.) Despite being employed, directed, and paid by Bay Rim, Plaintiffs allege that FedEx Ground was also their employer but failed to pay "Plaintiffs and the other drivers" overtime, provide them meal and rest breaks, and maintain accurate wage statements. (*Id*. ¶¶ 9, 18, 20, 22-23, 27-29.) Based on these allegations, Plaintiffs asserted both putative class claims under Rule 23 and a representative claim under PAGA for penalties on behalf of "[a]ll drivers of California Service Providers." (*Id*. ¶¶ 10-16, 33-41 & Prayer for Relief.)

In denying class certification, the Court relied on evidence showing that Service Providers are contractually obliged to "bear all expenses associated with" the employment of drivers, including paying their "wages [and] salaries," and to comply with all laws governing "wage payment, final payment of wages, . . . overtime, and rest and meal periods." (Means Decl. Ex. B § 6.1, Ex. 1; Class Cert. Denial 15, ECF No. 171.) FedEx Ground, by contrast, lacks "authority to set [the drivers'] compensation, payment, work schedules and times, assignments, or other essential terms and conditions of employment." (Class Cert. Denial 15 (quoting exemplar Service Provider Agreement § 1.2).)

The Court also credited FedEx Ground's evidence showing that Service Providers paid their drivers differently and had different methods for complying with the Labor Code—with "at least some" Service Providers paying overtime premiums and "at least some" Service Providers "instruct[ing] their employees to take rest and meal breaks and monitor[ing] time records to ensure they did." (*Id*. (citing ECF Nos. 135-3, 135-4); *see also* ECF Nos. 135-1 to

---

[1] Evidentiary citations are to the exhibits to the Declaration of Jessica Scott in Support of FedEx Ground's Motion to Strike Plaintiffs' PAGA Claim.

135-7, 135-11, 135-16 to 135-18.) Based on this evidence, the Court correctly found that drivers employed by those Service Providers "would not have suffered harm" and could not prove a Labor Code violation. (Class Cert. Denial 16.) Accordingly, "in order to determine FedEx's liability for the alleged violations, a fact finder would be required to consider whether a putative class member worked for an ISP that paid overtime and provided rest and meal breaks"—a highly individualized inquiry defeating class certification. (*Id.* at 15-16.)

Testimony adduced in other cases, including *Overpeck v. FedEx Corp.*, No. 18-cv-7533-PJH (N.D. Cal.), further confirms the individualized nature of this inquiry across drivers for all Service Providers in California. For example, after a few dozen drivers submitted declarations in support of the *Overpeck* plaintiffs' motion for class certification, claiming to have been owed but not paid overtime and unable to take meal and rest breaks, a number of their employer Service Providers and other drivers submitted declarations and evidence specifically contradicting their claims. That evidence shows that many drivers were instructed to take their breaks and did, while others chose to voluntarily forgo breaks to more quickly finish their work day. (*E.g.*, Clere Dep. Ex. 6, Ex. 4 (letters from current and former drivers of Service Provider Clere Solutions admitting that they were informed of their rights to breaks and took breaks); Pinato Decl. ¶¶ 15-16, Ex. 5 (noting that despite informing drivers in writing and orally "every few weeks to take their rest and meal breaks," one driver mentioned that he did not take breaks "because he preferred to go home early").)

For instance, driver Gerald Johnson "just would not take [breaks] anyway" because "I'm more concern[ed] with finishing the route and doing what I can to get home." (Johnson Dep. 67:4-14, Ex. 6.) But he would meet his wife at Starbucks or somewhere else about once a week for lunch. (*Id.* at 68:8-20.) Driver Jason Seuth admitted he could have taken breaks and sometimes had routes of less than six hours, but still chose not to take breaks. (Seuth Dep. 70:1–73:16, Ex. 7.) Still others were paid meal and rest break premiums when they forewent breaks. (*See* Lopez Decl. ¶ 16, Ex. 8.) Appendices A and B highlight numerous other examples of the contradicting testimony between drivers and their Service Provider employers.

**LEGAL STANDARD**

The Court may strike a PAGA claim "pursuant to its inherent powers." *Ortiz v.*

*Amazon.com LLC*, No. 17-CV-03820-JSW, 2020 WL 5232592, at *1 (N.D. Cal. Sept. 2, 2020)

(White, J.); *see also Wesson v. Staples the Off. Superstore, LLC*, --- Cal.Rptr.3d ----, 2021 WL

4099059, at *11 (Cal. Ct. App. Sept. 9, 2021) (holding that courts have inherent authority "to

ensure that PAGA claims can be fairly and efficiently tried"). That is because district courts

have "inherent powers that are governed not by rule or statute but by the control necessarily

vested in courts to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases." *Deitz v. Bouldin*, 136 S.Ct. 1885, 1891 (2016) (internal quotation marks

omitted). When a court uses this inherent power, it "must be a reasonable response to a specific

problem and the power cannot contradict any express rule or statute." *Id.* at 1892. As outlined

below, attempting to resolve Plaintiffs' PAGA claim would be unmanageable, and the Court

should exercise its inherent authority to strike or dismiss the claim.[2]

**ARGUMENT**

I.    **PLAINTIFFS' PAGA CLAIM SHOULD BE STRICKEN AS UNMANAGEABLE**

    A.    **The Court Has Inherent Authority to Ensure that Plaintiffs' PAGA Claim**

        **Will Be Manageable at Trial**

Under PAGA, an aggrieved employee may recover civil penalties for Labor Code

violations "on behalf of himself or herself and other current or former employees . . . against

whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(a), (g)(1).

To do so, a plaintiff asserting a PAGA claim must prove Labor Code violations "with respect to

each and every individual on whose behalf plaintiff seeks to recover civil penalties." *Hibbs–*

*Rines v. Seagate Technologies, LLC*, No. C 08-05430 SI, 2009 WL 513496, at *4 (N.D. Cal.

---

[2] The Court may also strike a PAGA claim under Federal Rule of Civil Procedure 12(f), which
"enables courts to strike from the pleadings any 'redundant, immaterial, impertinent or

scandalous matter.'" *Salazar v. McDonald's Corp.*, No. 14-CV-02096-RS, 2017 WL 88999, at
*7 (N.D. Cal. Jan. 5, 2017) (striking PAGA claim under Rule 12(f)). *But see Ortiz*, 2020 WL

5232592, at *1 (concluding that Rule 23(f) is "not the appropriate vehicle" to resolve a motion

to strike the PAGA claim, but should instead be evaluated under the Court's inherent powers).

March 2, 2009); *see also Arias v. Super. Ct.*, 46 Cal. 4th 969, 987 (2009) ("Recovery of civil penalties under the act requires proof of a Labor Code violation."). Allowing a plaintiff to recover PAGA penalties without proof of a violation would violate an employer's due process rights. *See Cardenas v. McLane Foodservice, Inc.*, No. SACV 10–473 DOC (FFM), 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011); *see also Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 35 (2014) (holding that "trial court could not abridge [defendant's] presentation of an exemption defense simply because that defense was cumbersome to litigate"); *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense.").

A California Court of Appeal recently acknowledged that PAGA actions based on alleged Labor Code violations may "cover a vast number of employees, each of whom may have markedly different experiences relevant to the alleged violations." *Wesson*, 2021 WL 4099059, at *11. In such cases, "determining whether the employer committed Labor Code violations with respect to each employee may raise practical difficulties and may prove to be unmanageable." *Id.*; *see also id.* at *14 ("In general, . . . a need for individualized proof pertaining to a very large number of employees will raise manageability concerns."). The trial court is "not . . . powerless to address the challenges presented by large and complex PAGA actions," nor is it "bound to hold dozens, hundreds, or thousands of minitrials involving diverse questions." *Id.* at *11. Rather, because "courts have inherent authority to manage litigation with the aim of protecting the parties' rights and the courts' ability to function," the California Court of Appeal held that lower courts should "pay close attention to manageability issues and intervene to ensure that the claims can be managed fairly and efficiently at trial." *Id.*

Indeed, as the Court recognized last year, multiple federal district courts have exercised "the power to strike a PAGA claim as unmanageable," doing so "pursuant to their inherent authority." *Ortiz*, 2020 WL 5232592, at *2 (requiring plaintiff to provide a proposed trial plan on PAGA claim); *see also Salazar*, 2017 WL 88999, at *8 ("Numerous federal courts in California have struck representative PAGA claims on manageability grounds."). Even if Rule

4

23 class certification standards do not apply to PAGA claims (an unsettled question), manageability remains an issue for some PAGA claims and, if so, must be addressed to ensure a fair and efficient trial. *See Bowers v. First Student, Inc.*, No. 2:14-cv-8866-ODW EX, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("Even if Rule 23 did not apply to PAGA representative claims, such claims can be stricken if they are found to be 'unmanageable.'").

In determining whether PAGA claims are manageable, courts consider whether the evidence shows that "numerous individualized determinations" would be required to try the claim, *Amey v. Cinemark USA, Inc.*, No. 13-CV-05669-WHO, 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015), *rev'd on other grounds*, 705 F. App'x 644, 645 (9th Cir. 2017), and whether the individual issues "can be tried fairly and efficiently," *Wesson*, 2021 WL 4099059, at *13. *See also Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (striking PAGA claim as "unmanageable because a multitude of individualized assessments would be necessary"). In particular, when Labor Code violations are dependent on unique characteristics of each employee's experience, rather than on policies or practices common to the "aggrieved employees," courts have found it is appropriate to strike representative PAGA claims as unmanageable. *See Amiri v. Cox Commc'ns Cal., LLC*, 272 F. Supp. 3d 1187, 1193-94 (C.D. Cal. 2017).

For instance, in *Amiri*, the court noted that while the plaintiff may be able to prove that "*he* was pressured to skip meal and rest breaks" in violation of California law, he "provided no theory to demonstrate how the group of 1,000 'aggrieved employees' [who worked in] three different geographic markets" suffered from that same pressure "and found themselves unable to take breaks." *Id.* at 1195. Ultimately, the *Amiri* court concluded that having to "determine (1) whether each individual took a particular meal or rest break (2) on a particular occasion and (3) if the individual skipped the break, why it was skipped for each of the around 1,000 aggrieved employees" required "numerous individualized determinations" that made the PAGA claim unmanageable. *Id.*; *see also Salazar*, 2017 WL 88999, at *8-9 (striking PAGA claim as unmanageable where class certification record showed that the plaintiffs "offer no easy way" to

adjudicate the claims of more than 1,200 employees); *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA PJWX, 2014 WL 5904904, at *3 (C.D. Cal. Nov. 10, 2014) (striking PAGA representative allegations where the class certification evidence established that the PAGA claim was "unmanageable because a multitude of individualized assessments would be necessary"). The same result should follow here.

### B.     Plaintiffs' Expansive PAGA Claim Is Unmanageable

Plaintiffs' PAGA claim covers nearly 20,000 drivers that worked for 580 different Service Provider employers throughout California. (Means Decl. ¶ 8, Ex. 1.) Resolution of whether any of these 20,000 drivers suffered Labor Code violations and, if so, how many, in what form, and to what extent will require *thousands* of individualized determinations.

Plaintiffs have not pointed to—and cannot point to—any uniform policy or practice that would provide an efficient way to determine whether a driver was denied his or her right to take meal and rest breaks. Nor have they pointed to any uniform policy or practice that would show whether a driver worked but was not paid overtime—again, because no such method exists. And there is no efficient way to determine whether a driver primarily drove light or heavy trucks—an issue directly relevant to whether drivers are subject to California's overtime or meal and rest break laws. The evidence FedEx Ground provided in its Opposition to Plaintiffs' Motion for Class Certification ("FedEx Ground Opp'n"), incorporated by reference herein, shows that Service Providers have complete discretion over how they operate and use different pay policies and practices, different time recording mechanisms, and different policies and practices for breaks. (FedEx Ground Opp'n 3-6, ECF No. 134.) Thus, as the Court already found, even if Plaintiffs could prove FedEx Ground was a joint employer,[3] in order to determine FedEx Ground's liability, multiple individualized determinations would have to be made for each driver, for each and every pay period. (Class Cert. Denial 15-16.)

---

[3] While recognizing the Court found otherwise, FedEx Ground maintains that determining whether it is a joint employer also is a highly individualized issue that cannot be decided for all drivers all at once. Rather, the finder of fact cannot properly decide that question without assessing each driver's and each Service Provider's interactions with FedEx Ground.

1    The Court further found that there is no way to get this necessary information from
2    scanner data, as Plaintiffs proposed. Plaintiffs have intimated that they intend to prove each
3    purported PAGA violation by relying on the same scanner data previously mentioned by their
4    expert—an approach the Court already rejected. As the Court noted, the "time records in
5    evidence also show that, contrary to Plaintiffs' argument, FedEx scanner data would not
6    establish on a class-wide basis whether a putative class member worked overtime or was
7    provided with a rest or a meal break." (Class Cert. Denial 15.) The evidentiary value of scanner
8    data is limited: because drivers do not log off the scanner when they take breaks, the scanner
9    does not provide evidence of overtime violations. Nor does it show who was told to take breaks
10   but chose not to, who was never told to take breaks, who was told they could not take breaks,
11   who was so pressured by their Service Provider that they simply could not take breaks, or even
12   who did take breaks and when. (FedEx Ground Opp'n 9-10; Means Dep. 259:9–260:5, Ex. 9;
13   Freeman Decl. ¶ 12, Ex. 10; Lopez Decl. ¶ 13, Ex. 8; Means Decl. ¶¶ 32-38, Ex. 1; Sosa Dep.
14   113:9-20, Ex. No. 11; Secord Decl. ¶ 12, Ex. No. 12.)

15          Therefore, the trier of fact will need to examine and decide the following issues <u>on a</u>
16   <u>driver-by-driver basis</u> to determine whether each suffered any overtime or meal and rest break
17   violations and, if so, what types and how often:

18   - what type of vehicle the driver drove (and therefore whether overtime claims are
19     exempt and whether meal and rest break claims are preempted);
20   - how the driver was paid;
21   - whether the driver worked overtime (while also driving a light truck);
22   - whether the driver was paid for that overtime;
23   - if he/she was paid overtime, whether that overtime was properly calculated (e.g.,
24     took into account non-discretionary bonuses);
25   - whether the driver's wage statements were accurate;
26   - whether the Service Provider satisfied its meal-rest break obligations by having a
27     valid policy and communicating that policy to drivers or taking steps to enforce the
28

policy);

- whether the driver took meal and rest breaks or voluntarily chose to work through the breaks;
- whether the Service Provider effectively denied breaks because it assigned too many packages/stops to some or all of its drivers;
- whether the Service Provider required any of its drivers to work through meal and rest breaks and, if so, whether it paid meal and rest break premium pay; and
- what "pay periods" were used by each of the 580 Service Providers in California, which cannot be gathered from any FedEx Ground scanner data.

Plaintiffs have not—and cannot—offer any way to answer all of these questions while also allowing for a fair and efficient trial.

### 1. Resolution of Meal and Rest Break Claims Requires Individualized Assessments for Each Driver

To prove a Labor Code violation for failure to provide meal and rest break claims, Plaintiffs must do more than show that some drivers did not take breaks. *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1039-40 (2012) (employer must make meal and rest periods available but does not need to ensure employees actually take those breaks). In this joint employment case, Plaintiffs have not presented any evidence of a uniform policy that prevented all 20,000 drivers from taking breaks. To the contrary, as the Court already found, Service Providers were contractually and legally required to follow wage and hour laws, which required them to make breaks available (when not preempted). (Class Cert. Denial 15; Means Decl. Ex. B § 6.2(C), Ex. 1.) In accordance with this, many Service Providers made drivers aware of their rights and took steps to ensure they took breaks. (*E.g.*, Ataie Decl. ¶ 16, Ex. 3 ("All drivers who worked for Wahoo, Motion Express, or Greenspoke, including me, have been told during their training that they had the right to take, and should take their meal and rest breaks."); FedEx Ground Opp'n App. A, ECF No. 134-1.) Drivers for those Service Providers have not experienced any violation of California's break laws and therefore would have no

claim against FedEx Ground (assuming Plaintiffs could prove it was a joint employer).

Plaintiffs also assert that they were "too busy" to take meal and rest breaks. But Service Providers set drivers' schedules and routes, so whether any individual driver was "too busy" to take breaks will vary widely and, in many instances, will be subject to dispute by each Service Provider. (*See* FedEx Ground Opp'n App. A.) Below are some examples of contradictory testimony between drivers and their Service Provider employers, showing just how individualized and unmanageable this inquiry will be:

| Driver | Service Provider Owners |
|---|---|
| **Plaintiff Michele Hinds** | **Rupesh Parikh, Bay Rim Services, Inc.** |
| "During my employ as a Delivery Driver for No Choice and Bay Rim, I was never made aware of any procedures or schedules for meal or rest periods." (Hinds Decl. ¶ 9, ECF No. 113-22.) | "Most of the routes . . . were typically anywhere from five to seven hours, no more than that, allowing for the drivers to have their breaks as needed, their lunch breaks, their break period that they are required to take." (Parikh Dep. 28:22–29:2, Ex. 13.) |
| **Plaintiff Tyrone Powell** | |
| "As a Delivery Driver for FedEx, I did not have the opportunity to take meal and rest periods." (Powell Decl. ¶ 9, ECF No. 113-23.) | "[Drivers] were required to take a break, but it was up to them to take their breaks." (Parikh Dep. 65:23-24, Ex. 13.) |
| **Tony Warner** | **Angela Kim, Sylkim, Inc.** |
| "I was not provided uninterrupted, thirty-minute meal periods during which I was completely relieved of any duty by the end of the fifth hour of work and at the end of the tenth hour of work. My workload and expectations from FedEx also did not permit me to take off-duty rest periods of even 10 minutes every 4 hours." (Warner Decl. ¶ 20, Ex. 14.) | "I repeatedly emphasized to Mr. Warner and my other drivers that he was not just permitted to take breaks, but that he was required to take his breaks and that they were required by law. Mr. Warner confirmed to me that he was taking his breaks on his handwritten time cards, which he manually prepared and signed verifying their accuracy." (Kim Decl. ¶ 13, Ex. 15.) |
| **David Grigoryan** | **Charles David Clere, Clere Solutions Inc.** |
| "The work was fast-paced and busy, with little time to rest. During my workdays, I typically did not stop for lunch. This is because if I stopped to eat a meal, I would miss pickup or delivery windows." (Grigoryan Decl. ¶ 7, Ex. 16.) | "The records show that [Mr. Grigoryan] pretty consistently took his lunch around the same time each day, but his rest times varied as did his times for the start and end of his days." (Clere Decl. ¶ 9, Ex. 17; *see also* Clere Dep. Ex. 6, Ex. 4 (letter from Mr. Grigoryan stating "I knew that I was required to take my rest breaks and lunches. On that route, I was |

9

| | |
|---|---|
| | able to take these breaks and did so. I never felt that I wasn't allowed to or couldn't take all my breaks. Clere Solutions, in meetings, would repeatedly tell us how important it was to take our breaks and that we had to because it was law.").) |
| **Esteban Ruiz** | **Miguel Cabrera Jr., Cabrera Enterprises** |
| "My schedule did not allow me to take uninterrupted, thirty-minute meal periods during which I was completely free from delivery responsibilities by the end of the fifth hour of work. It was impractical to even get a 10-minute rest period every four hours during my shift." (Ruiz Decl. ¶ 28, Ex. 18.) | "Even though we instruct our employees to take their breaks, including a half-hour lunch break, we pay them for the half-hour lunch break even though not required to by California law. As you can see from the time cards and paystubs discussed below, there are no deductions for half-hour lunches." (Cabrera Decl. ¶ 4, Ex. 19.) |
| **Gerald Johnson** | **Elliot Tenter, Tenter Enterprises, Inc.** |
| "I rarely have the opportunity to stop and take off duty rest breaks because of the high volume of work I am required to complete each day. . . . I often have to cut my 30-minute meal periods short and sometimes cannot even take a shortened meal." (Johnson Decl. ¶¶ 12-13, Ex. 20.) | "It is not true that Mr. Johnson is not permitted to take rest or meal breaks. . . . [H]e was permitted to take, and did take, at least his thirty-minute meal breaks daily. . . The documents in Exhibit D show that Mr. Johnson took a 30-minute lunch break each day he worked." (Tenter Decl. ¶¶ 8-9, Ex. 21.) |
| **Alfonso Alviso** | **Raymond Flores, Ground Flor Package Systems, Inc.** |
| "Because of the persistent pressure of haste put on me, meal or rest breaks have not been practical while working for FedEx. I was not given an opportunity to take such breaks." (Alviso Decl. ¶ 29, Ex. 22.) | "At the bottom of each time card, right above where Mr. Alviso signed, there was a paragraph that stated: "I acknowledge and agree that I have reviewed this time sheet and verified its accuracy. During each work period I have been authorized and permitted to take 10 minute rest periods every four hours of work or major fraction thereof. I have also taken my daily meal period of at least 30 minutes unless I worked less than a six hour shift, and on those occasions I consented to waive the meal period. During all rest and meal periods, I have been relieved of all duties." (Flores Decl. ¶ 13, Ex. 23.) |
| | **Alex Saludes, ALX Logistics** |
| | "I instructed all of ALX's employees to take meal and rest breaks. Mr. Alviso, however, often chose to forego his because he said he |

| | |
|---|---|
| | wanted to get off early. Usually his days for ALX consisted of working about 5-6 hours." (Saludes Decl. ¶ 17, Ex. 24.) |

As illustrated above and in Appendix A, the evidence shows <u>significant</u> variation in meal and rest break practices—at least some Service Providers did make breaks available, at least some took steps to enforce their break policies, and at least some drivers took their breaks or voluntarily chose not to. Given this undisputed evidence, a detailed assessment of each driver's meal and rest break evidence will be required to determine if there was a violation.

### 2. Resolution of Overtime Claims Requires Individualized Assessments

Plaintiffs' claims for unpaid overtime also require an individualized assessment of each driver to determine if they worked overtime hours, were legally entitled to be paid overtime premiums, were paid overtime, and, if so, were paid properly. Because each Service Provider determines how to pay its drivers, pay plans vary by Service Provider and, indeed, even within Service Provider. (*E.g.*, Diniz Dep. 71:5–73:21, Ex. 2 (describing how MRD Transports changed from paying its workers a minimum payment with overtime, then to no overtime if the driver drove a heavy vehicle; Sosa Dep. 35:19–36:9, 38:18–39:11, Ex. 11 (describing change at A.D. Sosa from paying hourly with overtime to a daily rate).) As the Court noted in its Class Certification Denial, "at least some of [Service Providers] paid overtime premiums and, in some instances, did so even when an employee drove a vehicle with a GVWR that exceeded 10,000 pounds." (Class Cert. Denial 15; *see, e.g.*, Freeman Decl. ¶¶ 15, 18, Ex. 10; Lopez Decl. ¶ 19, Ex. 8.) The testimony from *Overpeck* drives home that point. (Exs. 4-7, 11, 14-28.)

Below are just some examples from Appendix B of the contradictory evidence on whether drivers worked overtime or were legally owed overtime—highlighting the fact-specific evidence that would need to be analyzed as to nearly 20,000 drivers at 580 Service Providers:

| Driver | Service Provider Owners |
|---|---|
| **Plaintiffs** | **Rupesh Parikh, Bay Rim Services, Inc.** |
| "I was not paid any overtime. Instead, throughout my time delivering for FedEx, I was paid a flat weekly rate." (Hinds Decl. | Bay Rim would pay a weekly rate based on 40 hours of work "unless [manager] James told me that [Hinds] did something extra or |

| | |
|---|---|
| ¶ 26, ECF No. 113-22; Powell Decl. ¶ 27, ECF No. 113-24.) | she did something more. If James communicated there was some extra work done, overtime work done, et cetera, then I would adjust her pay scale." (Parikh Dep. 54:18-24, Ex. 13.) |
| **Tony Warner** | **Angela Kim, Sylkim, Inc.** |
| "Even though I worked many overtime hours, I was not paid at a premium rate for them." (Warner Decl. ¶ 19, Ex. 14.) | "The documents in Exhibit A show that Sylkim, Inc. paid Mr. Warner a regular hourly rate, overtime, double overtime and bonuses." (Kim Decl. ¶ 8, Ex. 15.) |
| **Ronald Barsz** | **Catherineona Bagnara, 50/60 Heaven** |
| "Even though I worked so many overtime hours, I was not paid at a premium rate for the overtime hours I worked. As I state above, my hours ranged from 40 to 50 hours a week and often reached 10 hours or more per day." (Barsz Decl. ¶ 21, Ex. 25.) | "Ron drove a 26' straight truck for 50/60 Heaven, which is a large truck with a Gross Vehicle Weight Rating ("GVWR") of just under 26,000 pounds. He was therefore exempt from overtime pay requirements." (Bagnara Decl. ¶¶ 19-20, Ex. 26.) |
| **David Grigoryan** | **Charles David Clere, Clere Solutions Inc.** |
| "I routinely worked more than 11 hours per day and more than 55 hours per week. The workload was so heavy that it was not uncommon for me to work as many as 13 hours in a day, or 65 hours in a week. For example, during peak season I would often begin work at 8am and not finish until 9pm. Even though I worked so many overtime hours, I was not paid at a premium rate for them." (Grigoryan Decl. ¶¶ 24-25, Ex. 16.) | Mr. Grigoryan [initially] drove a P700 for Clere Solutions from December 2013 through September 2014. That vehicle has a Gross Vehicle Weight Rating ("GVWR") over 10,000 pounds. . . . Mr. Grigoryan's pay information from Clere Solutions . . . shows both regular and overtime pay. . . . [H]is weekly pay from Clere Solutions did in fact vary based on the number of hours he worked." (Clere Decl. ¶¶ 5, 7, & 10 Ex. 17.) |
| **Gerald Johnson** | **Elliot Tenter, Tenter Enterprises, Inc.** |
| "For most of my years making deliveries for FedEx, I have been paid just a daily rate of $160 per day, regardless of the number of hours worked and without any increase for overtime. Only recently have I been paid an hourly rate." (Johnson Decl. ¶ 5, Ex. 20.) | "Mr. Johnson states that he has been paid a daily rate with no increase for overtime until only 'recently.' However, Mr. Johnson has always been paid an hourly rate and received time-and-a-half for overtime during his employment with Tenter Enterprises." (Tenter Decl. ¶ 5, Ex. 21.) |

| Jose Luis Bautista III | Galdenio Noda, Papo, Inc. |
|---|---|
| "Even though I am working between 20 to 30 hours of overtime per week, I don't get paid at a premium rate for those hours. I am also not paid a regular rate for those hours I spent completing other tasks." (Bautista Decl. ¶ 23, Ex. 27.) | "Records show that Mr. Bautista did not work 60 hours per week as he claims. . . . Nor was he denied overtime when we logged more than 40 hours in a week." (Noda Decl. ¶ 7, Ex. 28.) |
| **Alfonso Alviso** | **Raymond Flores, Ground Flor Package Systems, Inc.** |
| "Although I am compensated for 40 hours a week, in actuality I work many more hours. . . . With my days having ranged between 11 to 15 hours in the past, I have put in many hours of what should be considered overtime work. Not only are those overtime hours not being paid at a premium overtime rate, but they are not being paid to me at all." (Alviso Decl. ¶¶ 4, 28, Ex. 22.) | "Mr. Alviso never drove a vehicle 10,000 pounds or less for Ground Flor. . . . Although Ground Flor was not required to pay Mr. Alviso overtime, these weekly minimum guarantees were based on 40 regular hours with 10 hours of overtime pay at time and a half." (Flores Decl. ¶¶ 4, 12, Ex. 23.) |
| | **Alex Saludes, ALX Logistics** |
| | "ALX Logistics does not have full-time drivers that drive vehicles with a GVWR of 10,000 pounds or less, and therefore is not required to pay overtime. Even so, within the last few years, ALX started paying time-and-a-half overtime pay." (Saludes Decl. ¶ 22, Ex. 24.) |

As illustrated above and in Appendix B, each driver's overtime claim would require a detailed examination of individual time and payroll records, in addition to individual testimony both from the drivers and their Service Provider employers. Because such an assessment cannot be accomplished in a manageable fashion, Plaintiffs' PAGA claim for overtime should be stricken. *See Brown v. Am. Airlines, Inc.*, No. CV 10–8431–AG (PJWx), 2015 WL 6735217, at *4 (C.D. Cal. Oct. 5, 2015) (striking PAGA claim for unpaid overtime where evidence showed some employees were paid all overtime or even overpaid).

### 3. Whether FedEx Ground Violated Overtime and Break Laws Requires Individualized Assessments Regarding Vehicles Driven

As the Court previously ruled, Plaintiffs may recover for overtime and violation of California's meal and rest break rules only if they drove vehicles weighing 10,000 pounds or less ("light vehicle"), and only if their use of light vehicles is more than *de minimis*. (MSJ

Order 12-13, 16, ECF No. 103.) This analysis, however, can be decided only on an individual basis, as driver-specific inquiries are required to determine vehicle weight information for each vehicle driven, as well as the number, percentage, frequency, and proportion of trips each driver drove a light vehicle (if any). Even for those drivers that make it past the *de minimis* threshold, the analysis of their claims would then have to be made on a week-by-week basis (i.e., they would be entitled to overtime (if worked) and meal-and-rest breaks only for weeks in which they drove light vehicles). *See Cooper v. Noble Casing, Inc.*, No. 15-cv-1907-WJM-CBS, 2016 WL 6525740, at *5 (D. Colo. Nov. 3, 2016). For example, Hinds drove a light vehicle only one time while she was employed by Bay Rim (and was a helper in a light vehicle one time), whereas Powell drove light vehicles for several weeks. Even if only a fraction of the 20,000 drivers had similar experiences, this kind of determination for thousands of drivers would render the PAGA claim unmanageable.

## II. PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF DRIVERS AT OTHER SERVICE PROVIDERS

Plaintiffs' PAGA claim should be dismissed for the additional, independent reason that they do not have standing to pursue relief on behalf of nearly 20,000 drivers across California. "Only an 'aggrieved employee' has PAGA standing." *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 82 (2020) (citing Cal. Lab. Code § 2699(a)). An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c) (emphasis added). Thus, a plaintiff only has PAGA standing to pursue claims against her employer. *See Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Super. Ct.*, 46 Cal. 4th 993, 1005 (2009) (holding that employee unions lacked standing to bring PAGA claims because the associations were not "employed by" defendants). Because it is the Service Providers that directly employ the drivers, and because those Service Providers are responsible for and make all decisions regarding wage compliance, Plaintiffs lack standing to pursue violations by Service Providers who did not employ them.

Plaintiffs also must satisfy the "irreducible constitutional minimum" of Article III

standing. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 673-74 (9th Cir. 2021) ("with no individualized harm, [a plaintiff] cannot establish traditional Article III standing"). To satisfy the requirements for standing, a plaintiff in federal court must show she has (1) suffered an injury in fact, (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In *Magadia*, the Ninth Circuit reversed the trial court's decision to allow the plaintiff, whom it determined had suffered no meal break violation, to seek PAGA penalties based on meal break violations incurred by other employees. 999 F.3d at 672. The Ninth Circuit concluded that PAGA does not confer standing on a party who had not "actually been injured by the defendant's challenged conduct." *Id.* at 678. The plaintiff in *Magadia* "lacked standing to bring the meal-break claim because he did not suffer injury himself." *Id.*

Similarly, here, Plaintiffs cannot satisfy the elements of Article III standing. They worked only for Bay Rim and therefore suffered an injury, if at all, only due to the actions and decisions of Bay Rim. Even if <u>other</u> Service Providers violated their drivers' rights under the Labor Code, Plaintiffs could not have been injured by that conduct and cannot show that their injury is "fairly traceable" to that Service Provider's conduct. *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2021 WL 3129460, at *16 (N.D. Cal. July 23, 2021) (denying class certification and finding that plaintiff did not have standing to assert wage and hour claims for putative class against franchises for which plaintiff had not played); *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) ("Without the prospect of class certification, [plaintiff's] claims against the Class Defendants are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing."). Plaintiffs, therefore, lack Article III standing to pursue their PAGA action on behalf of all drivers.

## CONCLUSION

The Court should strike or dismiss Plaintiffs' PAGA claim because it is unmanageable. In the alternative, the Court should dismiss Plaintiffs' PAGA claim due to lack of standing.

Dated:  October 15, 2021

Respectfully submitted,

WHEELER TRIGG O'DONNELL LLP

By: _/s/ Jessica G. Scott_____
JESSICA G. SCOTT

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.