Brandy T. Cody, State Bar No. 196923
Email: bcody@fisherphillips.com
Amberly A. Morgan
Email: amorgan@fisherphillips.com
James C. Fessenden
email: jfessenden@fisherphillips.com
Fisher & Phillips LLP
4747 Executive Drive, Suite 1000
San Diego, CA 92121
Telephone: (858) 597-9600

Jessica G. Scott, *appearing pro hac vice*
Email: scott@wtotrial.com
Andrew H. Myers, *appearing pro hac vice*
Email: myers@wtotrial.com
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MICHELLE HINDS, an individual, and TYRONE POWELL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; and BAY RIM SERVICES, INC., a California corporation,<br><br>Defendants. | Case No. 4:18-cv-01431-JSW (AGT)<br><br>**FEDEX GROUND'S UNOPPOSED[1] *MOTION IN LIMINE NO. 1* TO EXCLUDE EVIDENCE OF OR REFERENCE TO FEDEX GROUND'S PRIOR BUSINESS MODEL, INCLUDING LAWSUITS CHALLENGING, OR SETTLEMENTS STEMMING FROM, THAT MODEL**<br><br>Action Filed: March 5, 2018<br>FAC Filed: May 10, 2018<br>Trial Date: October 24, 2022 |

---

[1] Plaintiffs' non-opposition is attached.

## INTRODUCTION

Since 2009, FedEx Ground has contracted with independent business entities, or Service Providers, to provide pickup and delivery services between FedEx Ground package stations and its customers. It is those Service Providers' employees, like Plaintiffs, who provide the "last mile" services. In this litigation, Plaintiffs have attacked the Service Provider model as a "scheme" through which FedEx Ground "off-load[s]" its employer obligations to the local companies while still controlling those drivers' employment. (Pls.' Mem. in Supp. of Class Cert. ("Class Cert. Mem.") 1-2, ECF No. 113-1.) As Plaintiffs made clear in seeking class certification, they intend to rely on FedEx Ground's long-defunct prior independent contractor model—and the fact that several courts, including the Ninth Circuit, found those independent contractors to be FedEx Ground's employees, leading FedEx Ground to pay nearly $500 million in settlement costs—to prove that FedEx Ground employs them too. (*Id*. at 1, 2, 6, 7, 8, 9, 10, 20; Reply in Supp. of Class Cert. 2, 3, 5, ECF No. 147.)

Any evidence about FedEx Ground's earlier business model, including related litigation, should be excluded under Rules 401, 402, and 403. That model, which involved FedEx Ground contracting directly with drivers, ended eight years before Plaintiffs started working for Bay Rim. And the lawsuits applied a different legal test than what the jury will apply here. This evidence has no bearing on the questions of whether FedEx Ground is a joint employer and can be held liable for Bay Rim's wage and hour violations (if any). Further, if introduced at trial, it will serve only to needlessly prolong the trial, confuse the jury, and unfairly prejudice FedEx Ground. The evidence is inadmissible and should be excluded.

## STATEMENT OF PERTINENT FACTS, ALLEGATIONS, AND ARGUMENT

Much of Plaintiffs' class certification motion focused on FedEx Ground's prior model, where it contracted with individuals to perform its last-mile service. As Plaintiffs explained, this business model resulted in "dozens of lawsuits" being filed between 2003 and 2009, several courts finding that FedEx Ground "had in fact established an employment relationship with its delivery drivers, despite classifying and treating the workers as independent contractors," and FedEx Ground settling the lawsuits for nearly $500 million. (Pls.' Class Cert.

Mem. 1-2, 6-10, 20 (citing *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014)); *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1 (2007); *In re FedEx Ground Package Sys., Inc. Emp. Pracs. Litig.*, 792 F.3d 818 (7th Cir. 2015); *Craig v. FedEx Ground Package Sys. Inc.*, 335 P.3d 66 (Kan. 2014).) According to Plaintiffs, FedEx Ground's current Service Provider model is no different from the old one and, therefore, the decisions and settlement show that FedEx Ground jointly employed Plaintiffs here. (*See* Class Cert. Mem. 6 ("Like the former IC model, FedEx maintains significant control over all Delivery Drivers and ISP operations.").) Plaintiffs also theorized, citing no evidence in support, that the lawsuits are what caused FedEx Ground to transition to its current model "to add a layer of separation – at least on paper – between itself and the delivery drivers . . . ." (*Id*. at 1.)

In fact, FedEx Ground's current model shares few similarities with the over 15-year-old facts analyzed in those cases. Previously, FedEx Ground contracted directly with individuals, many of whom drove full time and were a one-person operation with no W-2 employees. (Means Decl. ¶ 43, ECF No. 135-1.) This was referred to as the "one man, one van" model. (*Id.*) It was that model that led to the multiple lawsuits against FedEx Ground. Those cases reviewed relationships from 1998 through 2007, and focused solely on individuals who both personally entered into "Operating Agreements" with FedEx Ground <u>and</u> drove full time. *See, e.g.*, *Alexander*, 765 F.3d at 984 (class consists of "full-time delivery drivers for FedEx in California between 2000 and 2007"); *Craig*, 335 P.3d at 72 (class consists of Kansas persons that drove a vehicle "on a full-time basis" from "February 11, 1998, through October 15, 2007"). Those independent contractor drivers had no employer if not FedEx Ground.

In 2009, FedEx Ground began radically revising its business model by, as just one example, contracting only with multiple work area owners. (Means Decl. ¶ 43.) By 2011, FedEx Ground contracted only with business entities, not individuals.[2] (*Id*.) Service Providers contract for a minimum number of service areas and stops, and the companies employ many

---

[2] FedEx Ground continued entering into Operating Agreements with businesses until 2014 when it fully moved to the current Service Provider model. (*Id*.) The misclassification cases, however, focused solely on individual independent contractors that drove their routes full time.

drivers and helpers. (*Id*.) Service Providers agree to use only persons they "treat[] as employees" in performing under the contract, and they have the "sole right and obligation to supervise, manage, [and] direct" those employees and to make all decisions regarding how to provide the contracted-for services. (Means Decl. Ex. B, §§ 1.2, 6.2.) Service Providers also must "bear all expenses" associated with the employment and to "assume sole responsibility . . . for compliance with Applicable Law," including federal and state wage laws. (*Id*. § 6.2.) Service Providers provide annual reports confirming their legal compliance, and FedEx Ground can audit for compliance. (Means Decl. ¶ 27; *id*. Ex. B, § 6.2.)

Because the Service Provider agreements are highly valuable, they are bought and sold in a competitive market. (Means Decl. ¶ 42.) Bay Rim bought its contract in 2014 from another Service Provider. (Parikh Dep. 9:23-10:17, 25:9-16, excerpts attached at Scott Decl. Ex. A.) Like many other Service Provider owners, Bay Rim's owner, Rupesh Parikh, did not drive and was, instead, a hands-off owner who delegated daily management to his operations manager, James Limon. (*Id*. at 25:21-26:21.) Consistent with the Service Provider Agreement, Bay Rim had its own pay policies and practices, decided who to hire and fire, trained its drivers and decided their schedules, designed its routes, determined which driver drove each route and vehicle, decided to participate in FedEx Ground's optional branding program, and communicated with its drivers about all things related to their work. (*Id*. at 28:17-29:7, 30:17-31:2, 49:1-16, 50:10-51:4, 54:22-55:11, 61:19-20, 62:1-6, 66:2-11, 71:13-72:14, 81:9-15; Powell Dep. 142:8-11, excerpts attached at Scott Decl. Ex. B.)

Bay Rim employed over a dozen drivers and helpers at any one time during the four years it operated, Plaintiffs being two of them. (Parikh Dep. 27:5-28:16.) Ms. Hinds worked for Bay Rim from July 2017 to February 2018, and Mr. Powell worked there from November 2017 to January 2018. (2d Am. Compl. ¶¶ 8-9, ECF No. 76.) Plaintiffs admit that they had only infrequent interaction with FedEx Ground personnel, instead raising day-to-day issues with Mr. Limon. (Powell Dep. 48:21-49:13, 52:5-23, 90:16-25, 147:3-13; Hinds Dep. 190:17-192:2, 193:7-12, 194:16-195:22, excerpts attached at Scott Decl. Ex. C.)

# LEGAL STANDARD

Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant under Rule 401 if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020). Relevancy requires that "the evidence logically advance a material aspect of the party's case." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citations omitted).

Relevant evidence may still be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Although district courts have "'wide discretion' in making Rule 403 decisions," they "must exclude evidence of slight probative value if there is a modest likelihood that the evidence would cause unfair prejudice or mislead the jury." *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, No. 14-cv-03953–BLF, 2015 WL 4593439, at *1 (N.D. Cal. July 30, 2015) (citing *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992)).

# ARGUMENT

Evidence of and reference to FedEx Ground's now-defunct business model, including the rulings against and settlements with FedEx Ground, is not relevant because it does not address facts of consequence in this action, will devolve the case into untold mini-trials while the parties fight over the facts of the prior model and cases and will unfairly prejudice FedEx Ground. The Court should exclude all such evidence and references.

## I. EVIDENCE ABOUT FEDEX GROUND'S OLD BUSINESS MODEL, INCLUDING LAWSUITS CHALLENGING THAT MODEL, IS IRRELEVANT

FedEx Ground's prior model, including the fact that other litigants successfully challenged it, has no probative value here. The "one man, one van" model ended five years before Bay Rim started contracting with FedEx Ground and eight years before either Plaintiff worked for Bay Rim. Unlike here, the lawsuits considered whether full-time drivers who contracted <u>directly</u> with FedEx Ground were misclassified as independent contractors. *See*

*Alexander*, 765 F.3d at 984; *Estrada*, 154 Cal. App. 4th at 4; *Craig*, 335 P.3d at 71-72. Those contractor-drivers had no employer, and were not entitled to labor code protection, unless they proved they were misclassified by FedEx Ground. Here, Plaintiffs indisputably were <u>employees</u>—of Bay Rim—regardless whether FedEx Ground is deemed to have been their <u>additional</u>, joint employer. This trial will focus only on the joint employment question and whether FedEx Ground can be held liable for Bay Rim's wage-hour violations (if any).

Not only are the two models different, but so is the law governing them.[3] *See Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 665-66 (9th Cir. 2022) (independent contractor test "does not apply to joint employment claims . . . ."); *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1032 (9th Cir. 2019) (test for "distinguishing employees from independent contractors . . . has no bearing here, because no party argues Plaintiffs are independent contractors"). The policy reasons animating the misclassification test—namely, the concern over the loss of tax revenue and employee protections—"does not extend to the joint employment context." *Bowerman*, 39 F.4th at 666. "[I]n the joint employment context, the alleged employee is already considered an employee of the primary employer," meaning that employer is paying payroll taxes and subject to the applicable labor laws. *Id*. (quoting *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289, 314 (2018)); *see also Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 1128 (2019). Because the issue here is "whether the employee is also an employee of the alleged secondary employer," *Curry*, 23 Cal. App. 5th at 314, the fact that FedEx Ground previously used independent contractors, which several courts deemed improper, says nothing about FedEx Ground's employer status here.

Nor does it tend to prove that FedEx Ground knew that Bay Rim committed any Labor Code violations or disprove FedEx Ground's good-faith defense. A "good faith dispute," which defeats Plaintiffs' waiting time and wage statement claims, occurs when "an employer presents

---

[3] *Compare Alexander*, 765 F.3d at 988 (*Borello* right-to-control test applies to independent contractors), *and Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 916 (2018) (ABC test applies to determine whether "a worker is properly considered the type of independent contractor to whom the wage order does not apply . . . ."), *with Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010) (company is a joint employer if it (1) exercises control over the wages, hours, or working conditions; (2) suffers or permits to work; or (3) engages the worker).

a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." Cal. Code Reg. tit. 8, § 13520(a); *see Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2020 WL 887771, at *11-12 (N.D. Cal. Feb. 24, 2020) (adopting majority view that good-faith defense applies to wage statement claims). The good-faith defense applies unless FedEx Ground's belief that it was not the employer was "unsupported by any evidence," "unreasonable," or "presented in bad faith." *See Arroyo*, 2020 WL 887771, at *12. Here, given the significant differences—legally and factually—between the models (and the fact that *Alexander* and *Craig* came out after the model changed), evidence about the independent contractor model and its legal challenges says nothing about whether FedEx Ground adopted the Service Provider model unreasonably or in bad faith.[4]

## II. EVIDENCE ABOUT FEDEX GROUND'S PRIOR BUSINESS MODEL WOULD BE UNNECESSARILY TIME-CONSUMING AND UNDULY PREJUDICIAL

Even if evidence pertaining to the prior lawsuits and settlement were somehow relevant to an issue in this case, it should still be excluded under Rule 403, as it is outweighed by the dangers of wasting time, confusing the issues, and unfairly prejudicing FedEx Ground. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) ("[W]here the evidence is of very slight (if any) probative value, even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence."). If Plaintiffs are allowed to discuss and present evidence about the old model and lawsuits, FedEx Ground will need to devote substantial trial time to having its witnesses explain the two models and how they differ, what the lawsuits and settlements were about and not about, and justify its business decisions. The jury would also need to be instructed on how the independent-contractor misclassification test is different from the joint employment test, despite the jury not needing to decide anything related to misclassification. This is confusing and extremely prejudicial to FedEx Ground.

---

[4] In fact, as shown in FedEx Ground's opposition to class certification, FedEx Ground has sound, legally defensible reasons for believing it is not Plaintiffs' employer, *see, e.g.*, *Salazar*, 944 F.3d 1024; *Martinez*, 49 Cal. 4th 35; *Henderson*, 40 Cal. App. 5th 1111; *Curry*, 23 Cal. App. 5th 289, and the only court to date to have addressed the issue found that FedEx Ground was not a joint employer to Service Providers' drivers, *see Lightfoot v. Wahoo Logistics*, No. FCS050578 (Cal. Super. Ct. Feb. 2, 2022), attached at Scott Decl. Ex. D.

Rather than hear the facts about Plaintiffs' employment, the jury would be required to focus on a business model that has not been used in over 13 years and on cases that decided a different legal question. Such a mini-trial would waste valuable trial time on collateral issues, exacerbating the juror confusion. *E.g.*, *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) (affirming exclusion of prior complaints where it "might have resulted in a 'mini trial,' considering that much of their testimony was disputed by Defendants").

Hearing about rulings against FedEx Ground and subsequent massive settlements also would be unfairly prejudicial to FedEx Ground, as it poses a significant risk that the jury will base its verdict on a false correlation to a similar-sounding, yet distinct, issue. *See Shuler v. Los Angeles*, 849 F. App'x 671, 673 (9th Cir. 2021) (evidence is "unfairly prejudicial" if it has an "undue tendency to suggest decision on an improper basis" (quoting Fed. R. Evid. 403 advisory committee note to 1972 proposed rules)). In *Alexander*, after the Ninth Circuit held that California delivery drivers were "employees as a matter of law," 765 F.3d at 987, and FedEx Ground agreed to settle with a class of over 2,000 California drivers for $226,500,000, *see* No. 05-CV-00038-EMC, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016). Placing that decision and nine-figure amount in front of a jury "would create a significant danger that the jury would base its assessment of liability on remote events involving other employees, instead of recent events concerning Plaintiffs." *Tennison*, 244 F.3d at 690.

Because such evidence will have the immediate effect of painting FedEx Ground as a culpable party in the minds of the jury, the Court should exclude it under Rule 403. *E.g.*, *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 686 F. App'x 422, 424-25 (9th Cir. 2017) (affirming district court's exclusion of evidence of prior lawsuits under Rule 403).

## **CONCLUSION**

References to or evidence of FedEx Ground's prior business model, including the lawsuits challenging that model, are not relevant, would confuse the issues, and be unfairly prejudicial. They should be excluded under Federal Rules of Evidence 401, 402, and 403.

Dated: September 2, 2022

Respectfully submitted,

WHEELER TRIGG O'DONNELL LLP

By: /s/ Jessica G. Scott
JESSICA G. SCOTT

Attorney for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2022, I electronically mailed the foregoing **FEDEX GROUND'S *MOTION IN LIMINE NO. 1* TO EXCLUDE EVIDENCE OF OR REFERENCE TO FEDEX GROUND'S PRIOR BUSINESS MODEL, INCLUDING LAWSUITS CHALLENGING, OR SETTLEMENTS STEMMING FROM, THAT MODEL** to the following email addresses:

- **Joseph Clapp**
  jc@asmlawyers.com

- **Kas Larene Gallucci**
  kas@consumeradvocates.com

- **Michael Houchin**
  mike@consumeradvocates.com

- **Ronald A. Marron**
  ron@consumeradvocates.com

- **Lilach Halperin**
  lilach@consumeradvocates.com

- **Isam C. Khoury**
  ikhoury@ckslaw.com

- **James H. Hill**
  jhill@ckslaw.com

- **Timothy D. Cohelan**
  tcohelan@ckslaw.com

- **Albert C. Lin**
  alin@fisherphillips.com

*/s/ Jessica G. Scott*

---

9
FEDEX GROUND'S UNOPPOSED *MOTION IN LIMINE NO. 1* TO EXCLUDE EVIDENCE OF OR REFERENCE TO FEDEX GROUND'S PRIOR BUSINESS MODEL
CASE NO. 4:18-cv-01431-JSW (AGT)