Joseph Clapp, Esq., SBN 99194
AIMAN-SMITH & MARCY
7677 Oakport Street, Suite 1150
Oakland, CA 94621
Telephone: (510) 590-7115/Facsimile: (510) 562-6830
Email: jc@asmlawyers.com

Ronald A. Marron, Esq.
Michael T. Houchin, Esq.
Lilach Halperin, Esq,
Kas L. Gallucci, Esq.
LAW OFFICES OF RONALD A. MARRON, APLC
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006/Facsimile: (619) 564-6665
Email: ron@consumersadvocates.com
Email: michael@consumersadvocates.com
Email: lilach@consumersadvocates.com
Email: kas@consumersadvocates,com

Timothy D. Cohelan, Esq., SBN 60827
Isam C. Khoury, Esq., SBN 58759
J. Jason Hill, Esq., SBN 179630
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000
Email: tcohelan@ckslaw.com
Email: jkhoury@ckslaw.com
Email: jhill@ckslaw.com

Counsel for Plaintiffs and the Putative Class

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE HINDS, an individual, and TYRONE POWELL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., corporation; BAY RIM SERVICES, INC., a corporation; and Does 1 through 25, inclusive,<br><br>Defendants. | Case No.: 4:18-cv-01431-JSW (AGT)<br><br>**Plaintiffs' Briefs re Disputed Jury Instructions and Right to Jury Trial on PAGA Claims**<br><br>Judge: Honorable Jeffrey S. White<br>Department: 5 |

**Plf Brief re Disputed Jury Instructions**
*Hinds, et al. v. FedEx Ground Packaging System, et al.*          Case No. 18-cv-01431-JSW

Pursuant to Section 2(g) of the Final Pretrial Conference Procedures and Required Filings, Plaintiffs submit this brief on disputed jury instructions. In addition, they submit a brief demonstrating that the liability portion of the PAGA claims should be tried to a jury.

**Disputed Instruction No. 2 – Definition of "Employer"**

Plaintiffs' proposed instruction is a neutral statement of the pertinent tests for employer status under the Wage Order.

The first test – control over wages, hours, and working conditions – is not disputed.

The second test – sufficient control over Bay Rim to indirectly control wages, hours, and working conditions – is based on *Medina v. Equilon Enters.* (2021) 68 Cal.App.5th 868, 879, which states, "Thus, a person can be a joint employer without exercising direct control over the employee. If the putative joint employer instead exercises enough control over the intermediary entity to indirectly dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment." That degree of control may be shown by the "near-complete control over the [second entity's] finances, day-to-day operations, facilities, and practices." *Id.* at 880-881.

The third test is the "suffer or permit to work" test. Under this test, "a proprietor who knows that persons are working in his or her business *without having been formally hired* . . . clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Mejia v. Roussos Construction, Inc.* (2022) 76 Cal.Appl.5th 811, 819 (emphasis in original); *see also Martinez v. Combs* (2010) 49 Cal.4th 35, 69-70.

FedEx Ground's proposed instruction adds contentious language that misstates the applicable law. Plaintiffs' neutral statement of the governing principles is preferable.

**Disputed Instruction No. 3 – Government Regulation**

Citing primarily the Ninth Circuit case *Moreau v. Air France*, FedEx Ground proposes a jury instruction essentially stating, as a matter of law, that it did not exercise any control when it required Bay Rim (and its drivers) to comply with DOT regulations. *Moureau* did not so hold, however, and certainly did not so hold under the tests applicable to employment under California Wage Orders. Instead, applying a regulation (29 CFR 82.106) promulgated under the federal Family and Medical Leave Act,[1] and as part of its review of 13 factors required for a determination of employment under federal law, the court noted that the putative joint employer set specifications for its service provider in order "to ensure compliance with various safety and security regulations." *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004). But instead of stating that these specifications did not evidence control, the court stated the exact opposite: "This type of activity can, in some situations, constitute 'indirect' supervision of the employees' performance." *Id.*

The court did go on to state that this evidence, standing alone, was not sufficient to compel a finding of joint employment under federal law. *Id.* ("When viewed in context, the supervision/control by Air France was minimal in contrast to numerous other factors which negate finding a joint employment relationship on these facts."). But FedEx Ground's proposed instruction that this supervision does not evidence the exercise of control cannot be squared with *Moreau*.

**Disputed Instruction No. 4 – Control Over Quality and Results**

FedEx Ground proposes a jury instruction stating that its exercise of control over "the means and manner of work performed" is somehow excused if motivated by "quality control, maintenance

---

[1] In pertinent part, 29 CFR 825.106 reads as follows:
"Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA."

of brand standards, or contract compliance." This instruction appears to be intended to explicate the traditional *Borello* test of employment, in which control over the means of performing the work, rather than over the results of the work, is one factor in determining employer status. *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations* (1989) 48 Cal.3d 341, 350. The lead case cited by FedEx Ground in support of its instruction is *Bowerman v. Field Asset Servs., Inc.*, which explained that whether the hiring entity's control was "results-oriented" or "means-oriented" depended on how the term "results" was defined. *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 668 (9th Cir. 2022).

The *Bowerman* case opined that the right to control "results" was a "broad" one, but then described how such "results" should be defined—surprisingly, how "results" should be defined for FedEx Ground itself: "For instance, in *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2004), we determined that '"results," reasonably understood, referred in the context of package delivery services to the timely and professional delivery of packages.'" *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 667, 668 (internal brackets omitted).

The *Bowerman* court then went into detail explaining that FedEx Ground had controlled the *means*, rather than merely the result, of achieving the "timely and professional delivery of packages":

> "Thus, we rejected FedEx's argument that it was controlling only the results of its drivers' work by mandating a particular dress code from the drivers' 'hats down to their shoes and socks'; by requiring them 'to paint their vehicles a specific shade of white, to mark them with the distinctive FedEx logo, and to keep their vehicles "clean and presentable and free of body damage and extraneous markings"'; and by dictating 'the vehicles' dimensions, including the dimensions of their 'package shelves' and the materials from which the shelves were made.' *Id.* at 989. We held that 'no reasonable jury could find that the "results" sought by FedEx included' such detailed requirements, which bore no logical relations to the 'timely and professional delivery of packages.' *Id.* at 990." (internal brackets omitted).

By controlling these details, then, FedEx Ground controlled the means of achieving the desired result. What *Bowerman* did *not* say is that FedEx Ground's *motive* for controlling the means—whether, for example, whether to control quality or to protect its brand—played any part in evaluating this *Borello* factor.

FedEx Ground also cited *Salazar v. McDonald's Corp.,* which dealt with the special and different considerations involved in franchise arrangements. *Salazar v. McDonald's Corp.*, 944 F.3d 1024 (9th Cir. 2019). A franchise contract "consists of standards, procedures, and requirements that regulate each store for the benefit of both parties," thereby minimizing variations between stores in such things as quality and service. *Id.* at 497. The Independent Service Provider Agreement signed by Bay Rim and other service providers was not a franchise agreement, however, and thus these special considerations do not apply.

**Disputed Instruction 7 – Calculation of Overtime**

Payment of a weekly salary to a nonexempt employee provides compensation only for the employee's regular, non-overtime hours. Labor Code Sec. 515(d). The Plaintiffs seek recovery for overtime work they performed as nonexempt employees.

**Disputed Instruction 8 – Meal Periods**

In *Brinker Restaurant v. Superior Court,* the California Supreme Court made its definitive statement of an employer's off-duty meal period obligation:

> "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant v. Superior Court* (2012) 53 Cal.4th 1004, 1040.

The *Brinker* Court repeatedly emphasized that "actual relief of duty" was key. In repeated hammer blows, the Court nailed down its point that *actually relieving the employee of duty* constituted the essence of the obligation. *Id.* at 1034 ("The IWC's wage orders have long made a meal period's duty-free nature its defining characteristic); at 1035 ("An off duty meal period, therefore, is one in which the employee '*is* relieved of all duty"); at 1038-1039 (the "fundamental" obligation is "to relieve the employee of all duty and relinquish any control over the employee and how he or she

spends the time").

In its proposed jury instruction, FedEx Ground seeks to alter this obligation in two ways. First, it waters it down, so that the employer need only "provide a reasonable opportunity" for a meal period. ("To establish this claim . . ., each Plaintiff must prove . . . 2. The Plaintiff was not provided a reasonable opportunity for a meal period that began after no more than five hours of work.") Thus, FedEx Ground seeks to subtly eliminate the core obligation of actually relieving the employee of all duty from the charging portion of the instruction.

Second, FedEx Ground seeks to add a "knowledge" element. ("FedEx knew or reasonably should have known that the Plaintiff was not provided a reasonable opportunity to take a meal period.") But there is no such "knowledge" element found in the *Brinker* Court's definitive statement of the meal period obligation.

FedEx Ground here seeks to conflate the elements of a claim for a meal period violation and the elements of claim for wages for work performed during the meal period. A meal period is a period of 30 minutes during which the employee has been relieved of duty. *Brinker Restaurant v. Superior Court*, 53 Cal.4th 1004, 1039-1040 ("off duty meal periods are similarly defined by actually relieving an employee of all duty"). It is important to understand that this duty-free period of time *is* the meal period—regardless of whether the employee chooses to work or chooses to play during that time. *Id.* (relieving the employee of duty "transforms what follows into an off duty meal period, whether or not work continues").

If the employee chooses to work, *and the employer knew or should have known that the employee was working*, then the employer must pay for the 30-minutes of time worked. *Id.* at 1040n.19. But the employer need not pay Labor Code Section 226.7(c)'s premium pay for a meal period violation ("one additional hour of pay") for the simple reason that there was no meal period violation. As the *Brinker* Court explained: "The employer that relinquishes control but nonetheless

knows or has reason to know that the employee is performing work during the meal period has not violated its meal period obligations [and owes no premium pay], but nonetheless owes regular compensation to its employees for time worked." *Id.* at 1040n.19.

In short: An employer satisfies its duty to provide a meal period when it relieves the employee of all duty and control, and it breaches the duty when it fails to do so. The employer's knowledge of whether the employee worked during the meal period is irrelevant to a meal period claim.

**Disputed Instruction No. 9 – Provide Meal Period**

"To summarize: An employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant v. Superior Court* (2012) 53 Cal.4th 1004, 1040.

**Disputed Instruction No. 10 – Failure to Record Meal Periods**

An employer must keep accurate records of meal periods. I.W.C. Wage Order 9(7)(A)(3), 8 CCR 11090. "If the employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." *Donahue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74. "Employers can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." *Id.* at 77.

### Disputed Instruction No. 11 – Failure to Provide Rest Periods

FedEx Ground adds a "knowledge" element to the instructions. But an employer's obligation is to authorize and permit employees to take off-duty rest periods, that is, to "relieve employees of all duty and relinquish control over how employees spend their time." *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. There is no "knowledge" requirement found in *Augustus's* definitive statement of the rest period obligation.

In addition, FedEx Ground fails to appreciate an important difference between meal period and rest period obligations: meal period time may be unpaid, but rest period time must be paid, and the jury instruction should reflect this difference. *Cf.* Wage Order 9(11)(A) *with* Wage Order 9(12)(A).

Bay Rim generally paid drivers a flat weekly rate, regardless of the number of hours worked. These drivers frequently worked numerous overtime hours in order to complete each days' pick-ups and deliveries. If they took a ten-minute meal period, then, they did so on their own time—*i.e.,* rest periods were not "paid."

For example, suppose a driver began at 8:00 a.m. and was able to complete his work at 5:00 p.m. without taking a rest period. If he had taken a ten-minute rest period during his shift, he would not have been able to complete his work until 5:10 p.m.. He would have received the same pay either way; thus, his rest period was unpaid. Wage Order 9(12)(A) ("Every employer shall authorize and permit all employees to take rest periods . . . . Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.").

### Disputed Instruction No. 12

"Every employer shall keep accurate information with respect to each employee including the following: . . .

"(3) Time records showing when the employee begins and ends each work period. Meal periods . . . shall also be recorded.

"(4) Total wages paid each payroll period. . . .

"(5) Total hours worked in the payroll periods and applicable rates of pay."

I.W.C. Wage Order 9(7)(A)(3), 8 CCR 11090.

### Disputed Instruction No. 13 – Wage Statement

Plaintiffs' proposed instruction is a neutral statement of the law. FedEx Ground's contentious statement includes a statement that a "good faith dispute" under proposed Instruction 15 precludes a finding that the employer acted "knowingly and intentionally." This Instruction 15, however, is based on 8 CCR 13520, which supplies this defense only for waiting time penalties under Labor Code Section 203; this defense does not apply to wage statement claims under Labor Code Section 226.

### Disputed Instruction No. 16 – PAGA Rest Periods

See discussion at Instruction No. 11.

### Disputed Instruction No. 17 – PAGA Meal Periods

See discussion at Instructions 8 to 10.

### Disputed Instruction No. 18 – Overtime

Plaintiffs' implicit concession that a PAGA claim for the failure to pay overtime to over 20,000 drivers employed by several hundred service providers might not be manageable is not equivalent to a concession that it would not be manageable for the handful of drivers employed by Bay Rim.

## Disputed Instruction No. 19 – PAGA Wage Statement

See discussion at Instruction 13.

## Disputed Instruction No. 20 – PAGA

Plaintiffs proposed instruction is neutral and concise.

## PAGA Liability Should Be Tried to a Jury.

Finally, the parties dispute whether the claims under the Private Attorneys General Act should be tried to a jury or to the court. Plaintiffs contend that the claims should be tried to a jury.

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Connor*, 372 U.S. 221, 222 (1963). "The Seventh Amendment provides that, 'in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.'" *Tull v. United States*, 481 U.S. 412, 417 (1987). "The Court has construed the language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law." *Id.* "Our search is for a single historical analog, taking into consideration the nature of the cause of action and the remedy as two important factors." *Id.* at 421n.6.

### Legal Nature of the Action.

"Prior to the enactment of the Seventh Amendment, English courts held that a civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." *Id.* at 418. "After the adoption of the Seventh Amendment, federal courts followed this English common law in treating the civil penalty suit as a particular type of an action in debt, requiring a jury

trial." *Id.* "Actions by the Government[2] to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring a trial by jury." *Id.* at 418-419.

**Legal Nature of the Remedy.**

"[C]haracterizing the relief sought is 'more important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." *Id.* at 421. "A civil penalty was a type of remedy at common law that could only be enforced in courts of law. Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Id.* at 422. "[A] court in equity . . . may not enforce civil penalties." *Id.* at 424.

FedEx Ground cites *LaFace v. Ralphs's Grocery Store*, 75 Cal.App.5th 388, 397, which held that there is no right to a jury trial in state court under state law. But in district court, the right to a jury trial is preserved by the Seventh Amendment.

FedEx Ground also notes that there are district court cases that say there are no jury trials in PAGA actions. Perhaps the best such case is *O'Connor v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 166556 at *8 (N.D. Ca. 2015), in which the court held: "Similarly, the PAGA claim does not appear to be a damages claim with any right to a jury." The reasoning appears to be: Damages is a legal remedy; a civil penalty is not damages; therefore, a civil penalty is not a legal remedy.

But this is a non sequitur. It is akin to saying: A man is a person; a woman is not a man; therefore, a woman is not a person. The fact that damages is a legal remedy does not foreclose a civil penalty from also being a legal remedy. And, as the *Tull* Court stated, definitively, it is.

---

[2] The State is the real party in interest in a PAGA action. *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1914 (2022.)

Thus, Hinds and Powell submit they have a Seventh Amendment right to a jury trial to determine liability on the PAGA claims for civil penalties. Both the nature of the action, which is analogous to the common law action of debt, and the nature of the remedy, which is a legal remedy, compel this conclusion.

But do Hinds and Powell have the right to a jury assessment of the *amount* of the civil penalties, as opposed to the determination of liability? "Only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature. *Id.* at 426. "The assessment of civil penalties thus cannot be said to involve the 'substance of a common-law right to a trial by jury,' nor a 'fundamental element of a jury trial.'" *Id.* Thus, "a determination of a civil penalty is not an essential function of a jury trial, and . . . the Seventh Amendment does not require a jury trial for that purpose in a civil action." *Id.* at 427.

On that basis, Hinds and Powell submit that they have a right to a jury trial to determine liability on their claims for PAGA penalties, although the court may assess the amount of the penalties.

Respectfully submitted,

Dated: September 19, 2022　　　　　　　aiman-smith & marcy


　　　　　　　　　　　　　　　　　　　　_____/s/ Joseph Clapp_____
　　　　　　　　　　　　　　　　　　　　Joseph Clapp, Esq.
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs