Jessica G. Scott, *appearing pro hac vice*
Email: scott@wtotrial.com
Michael T. Williams, *appearing pro hac vice*
Email: williams@wtotrial.com
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879

Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHELLE HINDS, an individual, and TYRONE POWELL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware corporation; and BAY RIM SERVICES, INC., a California corporation,<br><br>Defendants. | Case No. 4:18-cv-01431-JSW (AGT)<br><br>**FEDEX GROUND'S REPLY IN SUPPORT OF *MOTION IN LIMINE NO. 4* TO EXCLUDE CERTAIN ARGUMENTS ABOUT COMPLIANCE WITH DEPARTMENT OF TRANSPORTATION REGULATIONS**<br><br>Action Filed: March 5, 2018<br>FAC Filed: May 10, 2018<br>Trial: October 24, 2022 |

In their supplemental opposition, despite the Court's request that they do so, Plaintiffs do not dispute the myriad California cases holding that joint employment cannot be proven by evidence that a company and a contracted service provider agreed to comply with specific government regulations. *See, e.g.*, *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004); *Sw. Rsch. Inst. v. Unemployment Ins. Appeals Bd.*, 81 Cal. App. 4th 705, 709 (2000); *Morales-Garcia v. Higuera Farms, Inc.*, No. 2:18-cv-05118-SVW-JPR, 2021 WL 6774327, at *17 (C.D. Cal. Oct. 15, 2021); *Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2017 WL 1365112, at *8 (N.D. Cal. Apr. 14, 2017); *Bright v. Dennis Garberg & Assocs.*, No. CV 10-07933 AHM (JCx), 2011 WL 13085923, at *5 (C.D. Cal. May 13, 2011); *Taylor v. Waddell & Reed Inc.*, No. 09CV2909 DMS WVG, 2010 WL 3212136, at *3 (S.D. Cal. Aug. 12, 2010)); *Yessayan v. FedEx Ground Package Sys., Inc.*, No. CV 05-8872 ER (VBKx), 2007 WL 5162454, at *2 (C.D. Cal. Jan. 3, 2007); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1161 (C.D. Cal. 2003); *see also, e.g.*, *FedEx Home Delivery v. N.L.R.B.*, 563 F.3d 492, 497, 501 (D.C. Cir. 2009); *N.L.R.B. v. Assoc. Diamond Cabs, Inc.*, 702 F.2d 912, 922 (11th Cir. 1983); *Local 777, Democratic Union Ord. Comm. v. N.L.R.B.*, 603 F.2d 862, 899 (D.C. Cir. 1978); *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 WL 3385116, at *3 (D. Ariz. July 10, 2014); *Matson v. 7455, Inc.*, No. CV–13–8068–PCT–SMM, 2000 WL 1132110, at *4 (D. Or. 2000).

Instead, Plaintiffs claim that the Independent Service Provider Agreement provisions on which they intend to rely (Schedule I sections 1.1, 1.3, 1.4, 1.7, 2, 3, 5.3, 5.7) are outside the scope of "the *Moreau* principle" because FedEx Ground imposed requirements that are stricter than the DOT safety regulations.[1] (Pls.' Supp. Opp'n 2-4, ECF No. 245.) This misses the mark. FedEx Ground never argued that Plaintiffs cannot elicit evidence or argue about provisions that <u>exceed</u> the DOT's safety regulations. They can, and FedEx Ground will present its own

---

[1] Plaintiffs are wrong in claiming (at 3) that no DOT regulation prohibits the transport of unauthorized persons, as found in Schedule I, section 2 of the Agreement. *See* 49 C.F.R. § 392.60(a) ("Unless specifically authorized in writing to do so by the motor carrier under whose authority the commercial motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any commercial motor vehicle other than a bus.").

testimony and evidence in response.

What Plaintiffs cannot do is equate <u>actual</u> rules mandated by the DOT—such as its requirements that drivers fill out an application and submit to a background check, physical examination, and drug test before they can drive (and then random drug tests after that); that motor carriers and drivers complete regular maintenance paperwork and maintain records for hours-of-service compliance; and that disqualified drivers be barred from driving during their disqualification period—to "control by FedEx Ground." (*See* Appendix A.) But this is precisely what they have done in prior briefing and argument before the Court, and why FedEx Ground has asked for an advance ruling on this issue:

- "In order to become a Delivery Driver, <u>FedEx requires</u> completion of a background check paid for by FedEx, a physical/medical exam that FedEx will pay for if an ISP uses an approved medical examiner', a drug test that FedEx will pay for if a 'FedEx Ground-qualified collection site is utilized', and a road test." (Pls.' Class Cert. Mem. 11 (citing Agreement, Schedule I ¶¶ 1.2, 3, Schedule of Amendments ¶ 1.1) (emphasis added); *see also id*. at 23; Hinds Decl. in Support of Pls.' Mot. for Class Cert. ¶ 8, ECF No. 113-22.)

- "I was required to fill out an application at the FedEx Ground facility to deliver FedEx packages." (Hinds Decl. in Support of Pls.' Mot. for Class Cert. ¶¶ 6-7, ECF No. 113-22; Powell Decl. in Support of Pls.' Mot. for Class Cert. ¶ 6, ECF No. 113-24.)

- "<u>FedEx requires</u> Delivery Drivers to prepare 'daily driver logs, daily vehicle inspection reports and any other legally required documents' and file them with FedEx 'at the end of each Service Day.'" (Pls.' Class Cert Mem. 9 (citing Agreement, Attachment A-2 to Schedule A, ¶ 2.7) (emphasis added).)

- "<u>FedEx further requires</u> ISPs to submit a monthly maintenance record to FedEx showing that they are in compliance with federal motor carrier safety regulations." (Pls.' Class Cert Mem. 10 (citing Agreement ¶ 8.4(A)) (emphasis added).)

- "Each vehicle must also be marked with an FXG-provided unit number." (Pls.' Class Cert Mem. 9 (citing Agreement § 8.3(A).)

- "FedEx also requires Delivery Drivers to use the scanners at the beginning and end of every workday to report their on-duty hours using their unique employee ID number and password. The software in the scanners records and analyzes data and produces detailed reports for FedEx, including reports that flag shifts for DOT hours-of-service violations." (Pls.' Class Cert. Mem. 8-9 (emphasis added).)
- "The ISPA also provides a list of twenty-three (23) instances in which Delivery Drivers become 'disqualified' and may no longer work under the ISPA, either permanently or for a specified period of time. If a disqualifying event occurs, an ISP must disqualify the Delivery Driver . . . ." (Pls.' Class Cert. Mem. 12 (citing Agreement, Schedule I, ¶ 1.4).)

Because these provisions are directly aimed at ensuring DOT compliance, as shown in Appendix A, Plaintiffs cannot argue they constitute relevant evidence of control for purposes of proving joint employment. Similarly, while Plaintiffs are correct that the contract sets forth <u>some</u> qualification and disqualification standards that exceed DOT requirements (and they can make that point), Plaintiffs should be precluded from arguing the mere fact that FedEx Ground and Service Providers agree that disqualified drivers cannot drive is proof of control. Indeed, allowing Plaintiffs to do so because FedEx Ground has imposed <u>greater</u> safety standards "would be counterproductive and would create a disincentive" for motor carriers to ensure safe conditions. *See Zhao*, 247 F. Supp. 2d at 1161; *Morales-Garcia*, 2021 WL 6774327, at *17.

## CONCLUSION

For these reasons and those set forth in *Motion in Limine No. 4*, FedEx Ground respectfully requests that the Court preclude Plaintiffs from offering evidence of DOT compliance solely to prove joint employment, from arguing that compliance with DOT regulations is evidence of joint employment, and from attributing DOT regulations to "<u>FedEx Ground</u> requirements or control."

Dated: September 30, 2022

Respectfully submitted,

WHEELER TRIGG O'DONNELL LLP

By: */s/ Jessica G. Scott*
    JESSICA G. SCOTT

Attorney for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.